[Civ. No. 14955. Second Dist., Div. One. May 9, 1946.]

SCREEN CARTOONISTS GUILD, LOCAL 852, Appellant, v. WALT DISNEY PRODUCTIONS, Respondent.

Katz, Gallagher & Margolis and Milton S. Tyre for Appellant.

O'Melveny & Myers, Pierce Works and W. B. Carman, Jr., for Respondent.

YORK, P. J.—This is an appeal by Screen Cartoonists Guild, Local 852 (hereinafter referred to as the "union"), from an order denying their motion to confirm an arbitrator's award and granting the motion of Walt Disney Productions (hereinafter referred to as the "company"), to vacate such award.

Under date of October 6, 1942, the union and the company entered into a collective bargaining agreement, clause eleventh of which provided that employees, who worked on certain specified holidays, should receive time and one-half therefor, and "If not worked, these holidays, if they fall within the work week, will be paid for at straight time."

Clause fifth of said agreement specified that the regular hours of work for employees should be "Eight hours per day, forty hours per week, five days per week, Monday through Friday, inclusive. . . ."

Christmas Day, 1943, and New Year's Day, 1944, both fell on Saturdays, and no work was performed by the employees on those days. The union claimed that the employees were entitled to pay on the ground that the work week was seven days; the company claiming that they were not entitled to pay because the work week was five days, Monday to Friday, inclusive. The matter was made a grievance under the terms of the agreement, and was ultimately submitted to arbitration in accordance with clause thirteenth thereof which provides in part as follows:

"4. All complaints, grievances, controversies, disputes, questions of interpretation of this agreement and all other differences between the parties hereto, shall be heard and determined by the Impartial Chairman (arbiter), if the same cannot in the first instance be otherwise disposed of under provisions hereof between the parties hereto. Said Impartial Chairman shall have power to make and enter any order, ruling or decree which in its judgment appears to be just and reasonable, having due regard for justice and equity in each case; *such ruling or decree, however, shall not be in conflict with the express provisions of this agreement.*

"5. . . . Each case brought to the Impartial Chairman shall be considered on its own merits, and *this agreement shall constitute the basis upon which such decision shall be rendered.*" (Emphasis added.)

The arbiter ruled that the "work week" mentioned in clause eleventh was a seven day week, therefore, the employees were entitled to straight time pay for the two holidays in question, and made his award accordingly. Upon refusal of the company to comply therewith, the union applied to the superior court for confirmation of the award, pursuant to section 1287 of the Code of Civil Procedure. The company

appeared in opposition to such application and moved the court to vacate the arbitral award on the ground set forth in section 1288(d), Code of Civil Procedure.

After hearing the matter, the trial judge denied the union's application for confirmation of the award, and granted the company's motion to vacate the same, giving as his reason therefor, as stated in his memorandum decision, ''that the arbitrator exceeded his powers in going outside the agreement to find a definition of the work week and that the award made by him was in conflict with express provisions of the Bargaining Agreement, and therefore falls under the provisions of subdivision d of section 1288, C.C.P., which requires that the award be vacated.''

An examination of the opinion and award of the arbiter discloses that he understood that his search for a definition of the term ''work week'' as used in clause eleventh was ''not to be pressed beyond the bounds of the contract,'' because of the limitation imposed upon him by paragraph 5, clause thirteenth, hereinbefore quoted.

Clause fifth of the bargaining agreement reads as follows:

''*Working hours and overtime*—Regular hours of work for employees shall be as follows:

''1. Eight hours per day, forty hours per week, five days per week, Monday through Friday inclusive, with one hour each day for lunch.

''2. All time worked in excess of eight hours per day or forty hours per week shall be paid at the rate of time and one-half.

''3. Employees reporting for work shall be paid for at a minimum of eight hours.

''4. Female employees shall not be required to work in excess of ten hours a week overtime.

''5. The following three provisions are by order of the President of the United States:

''a. *Seventh Day of Work.* Where, because of emergency conditions, an employee is required to work seven consecutive days in any regularly scheduled work week, double time must be paid.

''b. *Sixth Day of Work.* Overtime rates must be paid for work in excess of eight hours in one day, or on the sixth day in the work week, must be paid only where such payment is required by law or union agreement, but in no case can the rate be more than time and one-half.

"c. *Holiday Pay.* Whether required by union agreement or not, all war-related industries must pay time and one-half, but no more, for work performed on any of the six holidays: New Years Day, Fourth of July, Labor Day, Thanskgiving Day, Christmas and either Memorial Day or one other holiday of greater local importance."

In analyzing the foregoing clause (fifth), the arbiter argued that as used in subdivision *a* thereof, " ' seven consecutive days in any regularly scheduled work week', the term work week could not possibly refer to a five day week and must mean a seven day work week." As used in subdivision *b* of clause fifth, " 'on the sixth day in the work week', the term could not possibly refer to a five day work week and must mean at least a six day work week." Also, that the "term 'Regular Hours of Work' is a general heading covering all five sub-sections and cannot therefore be construed as applying only to the five-days clause which is only the first sub-section of the five sub-sections, all under the one general heading 'Regular Hours of Work.' The form of Clause Fifth indicates a concept of the *work-week* as seven days, some of which are straight-time days and others overtime days. . . . Since the term 'work week' clearly means seven days where it is used earlier in the contract, it is reasonable to interpret it as meaning the same thing in Clause Eleventh. . . . This interpretation is also in line with and not in conflict with any part of the present Federal regulations governing the work week. The work week Section (V) of Interpretative Bulletin No. I of the Premium Pay Executive Order (9240) states the following: 'A work week consists of seven (7) consecutive days starting on the same calendar day of each week. This is the definition of a work week under the Fair Labor Standards Act and is generally accepted by industry.' "

There is no doubt that clause fifth of the bargaining contract contemplated and fixed a regularly scheduled work week of five days, and then set up a schedule of overtime pay for those who voluntarily worked on the sixth day, and for those who were required through emergency to work seven consecutive days in the regularly scheduled work week. Under the terms of clause eleventh, as heretofore pointed out, since only those holidays occurring within the work week were to be paid for if not worked, it is an essential corollary that some holidays must fall without the work week. Otherwise,

418

if a work week of seven days had been contemplated, all holidays would fall within such work week, and clause eleventh would cease to have any meaning. In passing it should be noted that all wage scales and classifications set up in clause fourth of the contract were on a "weekly" basis, and not so much per hour or per day.

From the foregoing, it appears that in construing the work week to include Saturday, the arbiter's ruling was in direct conflict with the express terms of the bargaining contract, and thus exceeded the powers conferred upon him under clause thirteenth, heretofore quoted.

For the reasons stated, the order appealed from is affirmed.

Doran, J., and White, J., concurred.

A petition for a rehearing was denied May 31, 1946, and appellant's petition for a hearing by the Supreme Court was denied July 2, 1946.