[Civ. No. 18752. Second Dist., Div. Three. Apr. 30, 1952.]

JOHN J. McKAY, Plaintiff and Appellant, v. COCA-COLA BOTTLING COMPANY OF SANTA BARBARA et al., Defendants and Appellants.

Todd & Todd for Plaintiff and Appellant.

Schauer, Ryon & McMahon for Defendants and Appellants.

SHINN, P. J.—In a representative capacity, plaintiff John J. McKay, secretary-treasurer of Teamsters Union Local 186, brought this action for confirmation of an arbitration award pursuant to Code of Civil Procedure, section 1287. Over defendant's objections judgment was entered confirming the award, and a writ of execution was issued. Later, on defendant's motion the writ was quashed. Defendant appeals from the judgment confirming the award and plaintiff appeals from the order quashing the writ. We will first consider the appeal from the judgment.

Defendants (doing business as a partnership) and Local 186 entered into a collective bargaining agreement on March 1, 1947. The wages of all drivers, whether delivering Coca-Cola or beer, were fixed at a minimum of $60 per week. Duration of the agreement was to be five years with a provision for reopening for wage negotiations on March 1 each year, provided notice was given 60 days prior to that date. Notice was given in 1948 and on March 1, 1949, a supplemental agreement regarding wages was adopted. This supplemental agreement set the wages of all defendant's employees except the beer sales drivers. Deliverers of Coca-Cola were to receive $66 per week. With respect to beer drivers the supplemental agreement provided that the wages of the beer drivers should be fixed by arbitration.

A board of three arbitrators (one employer representative, one union representative and one neutral arbitrator) met October 4, 1949, to consider what the minimum wage rate for beer drivers should be. At that time defendant was voluntarily paying $63 per week. The union was asking for a rate of $75 per week. It was stipulated that all of defendant's competitors in the Santa Barbara area were paying $63 to soft drink drivers and two competitors were paying only $63 to beer drivers. During the arbitration hearing defendant adopted this wage for its drivers, under a contract provision hereinafter set forth. It developed that prior to June 1,

1949, other competitors paid $72.50 per weeks to beer drivers which was the rate received by 95 per cent of the beer drivers in California. On March 14, 1950, the neutral arbitrator rendered a decision that the minimum wage scale should be $72.50. The union arbitrator concurred.

It is stated in appellant's opening brief: "Despite the provisions of Code of Civil Procedure, Section 1280, the arbitration provisions of the Code of Civil Procedure apply to this type of labor contract arbitration. *Levy* v. *Superior Court,* 15 Cal.2d 692 [104 P.2d 770, 129 A.L.R. 956]." We shall so assume.

 Defendant's claim of error in the judgment is that the powers of the arbitrators were limited by the terms of the contract and that the award violates controlling contract terms. Those to be considered are the following: (1) The special agreement for arbitration in the 1949 agreement: "With respect to the wages, hours and conditions of employment of the Beer Sales Drivers, Warehousemen, Checkers and Helpers, it is agreed that the compensation for the employees of employer handling beer and the determination of their proper classification shall be made the subject of an arbitration, determination and award which shall be made in due course, to take effect from March 1st, 1949, and which shall be final and binding upon the parties"; (2) the general arbitration clause of the 1947 contract: "11. Parties hereto agree that wages, hours and conditions of employment shall be open to negotiations on March 1st of each year by written notice given by either party to the other by December 1st of each year commencing with December 1st, 1947. If the parties cannot agree, any matter of differences in respect thereto shall be subject to arbitration in the manner provided by paragraph 5 of the aforesaid agreement"; and (3) the most favored employer clause of the 1947 agreement: "7. The Union agrees that in the event it shall suffer, permit, or enter into any contract, agreement, understanding or condition between the Union and any competitor of the Employer, which is more favorable to Employer than the terms of this agreement, such contract, agreement, understanding, or condition shall, at the option of the Employer, be applicable to and deemed incorporated in this agreement, provided, however, that the foregoing shall not apply to any award to which the Union is a party, which shall be arrived at by arbitration. . . ."

The argument defendant makes may be stated as follows: At the time of the arbitration two of defendant's competitors were paying but $63 minimum wage to beer drivers; defendant elected to avail itself of its right under paragraph 7 to take the benefit of the wage rate being paid by these competitors and therefore the arbitrators were without power to fix a wage for defendant's beer drivers in excess of $63 per week minimum.

The meaning of this argument is that defendant could not be required to pay more, by means of an arbitration award, than its competitors were paying. The question was presented to the arbitrators whether paragraph 7 so limited their powers as to forbid their fixing the wages of defendant's beer drivers at more than $63 per week. Their decision reads in part as follows: "Issue No. 1: Inasmuch as the agreement of March 1, 1947 (Ex. 1) provides for a weekly wage of $60.00 per week for beer sales drivers and the lowest wage paid by any competitor of the employer is $63.00 per week, under the 'favored employers clause' of said agreement is such a competitor one that has a contract, agreement or understanding with the union more favorable than the terms of the agreement with the employer if the award to be made is higher than the wage paid by such competitor?

"Decision: No. Such a competitor does not have a contract,, agreement, or understanding with the union more favorable than the terms of the union's agreement of March 1, 1947. (Ex. 1.)"

When defendant elected, under paragraph 7, to adopt a wage of $63 per week, its contract was thereby modified and the original wage became nonoperative. Manifestly a competitor paying a wage of $63 per week has a more favorable contract than one who is paying $72.50. Plaintiff argues that defendant would not have been discriminated against before the award unless some competitor was paying less than $60 per week, nor after the award unless a competitor was paying less than $63 per week. The latter part of the argument is an attempt to justify the reasoning of the arbitrators. It ignores the fact that by the award the wage rate of $72.50 is substituted for the former rate and is thereby written into the agreement. The decision, in its reasoning, evades the real question. ■ But if the arbitrators reached a conclusion which was within the scope of a proper arbitration, unsound reasoning would not invalidate the result.

 As defendant construes the several quoted provisions the arbitration procedure could not be used at all unless some competitor was at the time operating under a contract more favorable to the union in some respect than that of defendant. Even then, and specifically as to wages, an award could not exceed the amount being paid by the competitor. We cannot agree.

Under the broad provisions for arbitration the contract may be reopened as of March 1st of each year for negotiation of wages, hours and conditions of employment and for arbitration if the parties cannot agree. The use of arbitration procedure for the fixing of wages is not limited to situations in which it appears that some competitor is paying a higher wage. The arbitration clauses stand alone. So does the most favored employer provision. The former are not modified by the latter. They should be harmonized and each be given effect in accordance with the intentions and purposes of the parties. (Civ. Code, §§ 1641, 1642, 1650.) Paragraph 7 does not purport to limit the right of the union to make wage contracts with defendant or its competitors. It operates prospectively, after the contracts are made. If this were not so, uniform contracts with several employers could not be opened annually or at all except for the purpose of lowering wages. There is nothing which suggests that the parties had any such intention. It was not expressed and cannot be inferred without ignoring clear provisions of the contract. It follows that the arbitrators had the power to fix the wages of defendant's drivers at a figure in excess of $63 per week.

 Although we agree with plaintiff that paragraph 7 may not be invoked to limit the arbitration procedure, it is nevertheless effective to protect defendant against wage advantages which the union may grant to defendant's competitors or suffer or permit them to enjoy.

It was established at the hearing that the union had not taken action to open the contracts of defendant's competitors who were paying the $63 weekly wage. That is not a matter which affects the present controversy. But lest there be some misunderstanding of our views, we may add that in our opinion paragraph 7 means that defendant has a right to adopt more favorable wage or other conditions granted to a competitor by the union, or suffered or permitted to be enjoyed by such competitor, except such as are established by arbitration to which the union is a party. It does not mean that once the wages of defendant's drivers are fixed by arbitra-

tion the protection against favoritism being shown to competitors is lost.

 That the arbitrators did not construe the contracts as we understand them, and employed faulty reasoning in arriving at their conclusion, is of no moment. The award was not in excess of their powers and was properly confirmed by the court.

Three weeks after entry of the judgment confirming the award, plaintiff petitioned for a writ of execution in the amount of the retroactive wages allegedly due under the judgment. The order for the writ was signed by a judge other than the one who heard the cause. After the writ was returned satisfied, defendants moved to quash execution. Grounds for the motion were that the judgment was not for money but was one altering a contract. The motion to quash was granted and plaintiff appeals from the order granting the motion.

The appeal is without merit. Before an execution may properly issue the judgment must be for money and the amount due and the persons to whom payable must be determined with exactness. (Code Civ. Proc., § 682; *Feldmeier* v. *Superior Court,* 12 Cal.2d 302, 307 [83 P.2d 929, 119 A.L.R. 927]; *Bank of America* v. *Standard Oil Co.,* 10 Cal.2d 90 [73 P.2d 903].) The judgment of the superior court went no further than to approve the arbitration award. The arbitrator's decision stated the minimum guarantee for beer drivers should be $72.50 per week. This was a minimum guarantee. The wage rate was $17 per week plus a commission of 4 cents per case on bottled beer and 3½ cents per case on canned beer. At the arbitration hearing it was stipulated that beer drivers' commissions had not amounted to the minimum guarantee at any time up to the time of arbitration. There was nothing in the decision about subsequent times. It is thus clear that the money due could not be determined from the judgment. It had been agreed that the award would be retroactive but there was nothing in the judgment or arbitration decision to indicate the amount of that award. Thus, the execution was improperly issued for the reason that by the judgment plaintiff McKay was not entitled to any money, nor was the amount due the employees and their identity fixed by the judgment.

The judgment and the order appealed from are affirmed.

Wood (Parker), J., and Vallée, J., concurred.