[Civ. No. 19250.   Second Dist., Div. Two.   Mar. 20, 1953.]

MICHAEL H. DRAKE, Respondent, v. IRVING STEIN et al., Appellants.

Arthur F. Larrabee for Appellants.

Nat C. Recht for Respondent.

MOORE, P. J.—This is an appeal from a judgment entered upon an order confirming an arbitrator's award. The questions for decision are (1) the sufficiency of an arbitration clause in a written contract providing that "all questions as to the rights and obligations of the parties arising under the terms of the contract, the plans and specifications are subject to arbitration"; (2) the revocability of such a clause, and (3) the sufficiency of compliance with the requisite statutory formalities.

### FACTS

Appellants and respondent contracted on March 18, 1951, for the substantial alteration of premises owned by appellants at Los Angeles. Respondent was to perform the work "in a good, workmanlike and substantial manner," to "commence work hereunder within 2 days after receipt of written notice from the owner so to do," and "in any and all events to complete the same within 70 days after commencement." As consideration for respondent's performance, in lieu of money, appellants agreed to transfer a parcel of realty to respondent by deed guaranteed by "Policy of Title Insurance in the amount of $7,500 as per terms and conditions" in a designated escrow. Time was declared to be of the essence. The following arbitration clause was adopted as paragraph 16 of the contract:

"As between the parties hereto, all questions as to the

rights and obligations of the parties arising under the terms of the contract, the plans and specifications are subject to arbitration. In case of dispute either party hereto may make a demand for arbitration by filing such demand in writing with the other. One arbitrator may be agreed upon, otherwise there shall be three, one named in writing by each party within five days after demand is given, and a third chosen by the two appointed. Should either party refuse or neglect to appoint said arbitrator or to furnish the arbitrators with any papers or information demanded he or they are empowered by both parties to proceed ex parte. If there be one arbitrator his decision shall be binding; if there be three the decision of any two shall be binding. Such decision shall be a condition precedent to any right of legal action, and wherever permitted by law it may be filed in court to carry it into effect. The arbitrators, if they deem that the case demands it, are authorized to award to the party whose contention is upheld such sums as they shall deem proper for the time, expense and trouble incident to the appeal, and if the appeal was taken without reasonable cause, damages for delay. The arbitrators shall fix their own compensation, unless otherwise agreed upon, and shall assess the costs and charges of the arbitration upon either or both parties. No one shall act as arbitrator who is in any way financially interested in this contract or in the business affairs of either Owner or Contractor . . ." At the end of May, 1951, a dispute arose and respondent ceased work on the project. On July 3, 1951, the parties executed an "arbitration agreement" by which two arbitrators were designated: Attorney Earl J. Opsahl by appellants, and George Heller by respondent. Appellants withdrew Opsahl's name and the attempt at settlement failed. Appellants' new counsel then notified respondent that "the agreement heretofore entered into is cancelled inasmuch as [Drake] has failed to do the work in a workmanlike and substantial manner." On July 21 Drake's demand for arbitration was rejected and Heller proceeded to act as sole arbiter and as such made a purported "arbitration award" that the Steins pay Drake $5,149. He awarded himself $200 as a fee for his own services, one-half to be paid by appellants, the balance by respondent. The main award was based on findings that "the contract price for the work to be done . . . [was] Seventy-five Hundred Dollars"; that the owners had agreed to pay $100 additional for certain changes; that "prior to the time the

work was to have been completed the contractor was ordered to discontinue any further work on the job''; that the reasonable cost to complete the job in accordance with the plans and specifications will be $2,451.

Three days later Drake filed a petition in the superior court for an order confirming the award. Judgment in accordance with the terms thereof was entered but was vacated on appellants' motion on December 4, 1951, on account of Drake's failure to plead compliance with the contractor license laws as set forth in section 7031 of the Business and Professions Code. On respondent's amended petition the trial court confirmed the award and included $1,000 for attorney's fees. Appellants' motions (1) to vacate the award and (2) for a new trial were denied.

SUFFICIENCY AND REVOCABILITY OF THE AGREEMENT

Appellant contends that paragraph 16 was not sufficiently complete to be enforceable and that moreover the contract ''had been cancelled or revoked by [the Steins] upon equitable or legal grounds.'' ▮ Although appellant is correct in contending that generally a submission agreement is a prerequisite to the commencement of a valid arbitration proceeding (see 3 Am.Jur., Arbitration and Award, § 16; 5 Cal.Jur.2d, Arbitration and Award, § 24; Kagel, *Labor and Commercial Arbitration Under the California Arbitration Statute,* 38 Cal.L.Rev. 799, 803-805) yet ''where the parties have executed an arbitration agreement, they undoubtedly may use it as a submission agreement as soon as the controversy arises.'' (5 Cal.Jur.2d, *supra.*) ▮ It is apparent from the inspection of the contract that paragraph 16 is properly interpreted as both a ''future disputes agreement'' (see Sturges, Commercial Arbitrations and Awards, § 26 et seq.) within section 1280 of the Code of Civil Procedure, and a complete though broad ''submission agreement.'' The issues to be submitted to arbitration under the latter were to include ''all questions as to the rights and obligations of the parties arising under the terms of the contract, the plans and specifications.''

Could appellants, as they claim, have ''cancelled'' a contract containing such a clause? Section 1280 of the Code of Civil Procedure states that ''an agreement in writing to submit an *existing controversy* to arbitration *pursuant to section 1281 of this code,* shall be valid, enforceable and irrevocable.'' This leaves open the theoretical argument that there can be an agreement to arbitrate *not* ''pursuant to sec-

tion 1281 of this code"; i.e., under "common-law arbitration." In that event, the agreement to arbitrate would be revocable until the time of the final award. (See 3 Am.Jur., Arbitration and Award, § 59; 6 C.J.S., Arbitration and Award, § 33; 5 Cal.Jur.2d, Arbitration and Award, § 4.)

Since the 1927 amendments and additions to the Code of Civil Procedure (Stats. 1927, p. 404) adopting the Draft State Arbitration Act, no California case has expressly decided whether or not a written contract can be the basis of common-law, as well as statutory, arbitration. Those decisions which have considered the matter have only done so in the form of innocuous dictum. (See *Silva* v. *Mercier,* 33 Cal.2d 704, 708 [204 P.2d 609]; *Rives-Strong Bldg., Inc.* v. *Bank of America,* 50 Cal.App.2d 810, 813 [123 P.2d 942].)

However, the case at bar does not involve an "existing controversy agreement" but a *future disputes agreement.* Such an agreement shall be "valid, enforceable and irrevocable, save upon such grounds as exist at law or in equity for the revocation of any contract." (Code Civ. Proc., § 1280.) The possible coexistence of common-law and statutory arbitration of existing controversies has no application to the facts of this case. ■ It is clear from the explicit and unambiguous language of section 1280 that the legislative intent was to make written contracts to arbitrate future disputes irrevocable, in direct derogation of the common law. Accordingly, assuming the absence of the elements necessary to permit a rescission of the contract (see Civ. Code, §§ 1689-1691), the arbitration proviso brought the matter within the arbitration statute. (Code Civ. Proc., §§ 1280-1293.)

## APPLICATION OF SECTION 1282

The next question for decision is: are the provisions of section 1282 optional or mandatory? That section provides that (1) a party aggrieved by the failure of another to perform under a written agreement for arbitration may petition the superior court for an order directing that the arbitration proceed as provided; (2) five days' notice in writing of the hearing of such application be served upon the defaulting party; (3) if the court shall after hearing the parties be satisfied that the making of the contract is not in issue it shall direct the parties to proceed to arbitrate in accordance with their agreement; (4) if the default be in issue, the court shall direct a summary trial thereof.

■ The provision that the aggrieved party "may peti-

tion'' for an order directing arbitation to proceed leaves no doubt that the resort to section 1282 is not mandatory but is merely one more remedy for settling a controversy where one party fails to carry out his agreement to arbitrate.

■ After such a default by one party, e.g., failure to name an arbitrator, the controversy is not removed from the operation of section 1282, *supra*. (Code Civ. Proc., § 1283.)

The fact that appellants may have ''cancelled'' the contract prior to respondent's demand for arbitration does not settle the matter. Upon that question's being raised, it was the duty of the court to make a judicial finding on the issue. It cannot be determined from the clerk's transcript that no grounds existed for a rescission of the contract.

■ In any proceeding for the enforcement of a contract for an arbitration of a dispute arising under it, a claim that the contract is invalid or that it has been rescinded places the controversy on the conscience of the court which must then determine the equitable issues raised by the defendant. It is only after a finding has been made that under a written contract of arbitration a party is in default in the performance thereof, that the court will order the parties to the contract to proceed in accordance therewith. ■ Repudiation by one of the parties does not enable the other to proceed without leave of the court. (*Pneucrete Corp.* v. *United States Fid. & Guar. Co.*, 7 Cal.App.2d 733, 741 [46 P.2d 1000].) From the foregoing it is apparent that the court below invaded the rights of appellants by its approval of the arbiter's award before it had first determined under section 1282, *supra*, that a valid, enforceable contract did exist.[1]

## THE CASH AWARD

In view of the fatal noncompliance with section 1282, it is not necessary to examine the informal arbitration proceedings conducted by the sole arbiter to determine whether appellants are correct in asserting that the procedural requirements of section 1286[2] were neither complied with nor

---

[1] The New York Arbitration Law, substantially identical with that of California, has been similarly interpreted. (*Bullard* v. *Morgan H. Grace Co.*, 240 N.Y. 388 [148 N.E. 559, 561].) In *Finsilver, Still & Moss* v. *Goldberg, Maas & Co.*, 253 N.Y. 382 [171 N.E. 579, 580-581, 69 A.L.R. 809] Cardozo, C. J., explains the reasons for a subsequent change in the New York statute.

[2] This section makes provision for the trial procedure before the arbitrators or the arbiter agreed upon similar to that of the superior court in a civil action.

waived. It will be assumed that Mr. Heller complied substantially with that statute. ▮ Arbitrators are not bound to a strict adherence to legal procedures. They are not required to find facts, give reasons for their awards, or describe the processes by which they arrived at their decisions. (*Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.*, 29 Cal.2d 228, 232 [174 P.2d 441].) But they are not, because of such freedom, released from the obligation to be guided by the basic agreement of the litigants. When appellants agreed in clear and unambiguous language to transfer a specific parcel of real estate and a policy of title insurance for the faithful performance of certain services by respondent it was not intended thereby to authorize the future arbitrators to award something else to respondent in case of an arbitration. But that is exactly what was done by Mr. Heller. Instead of the lot, he awarded to respondent the sum of $7,500 in cash. He made no pretense at ascertaining the fair market value of the lot at any time. He determined that "the contract price for the work to be done [was] Seventy-five Hundred Dollars" and awarded the parties their respective set-offs. Thus the Steins were left with a half-finished house and a judgment against them of $5,149 plus arbitrator's and attorney's fees. Had the work been entirely completed, Drake would have received as full payment the lot which according to the undenied statement of appellants was worth only $4,200 on the date when the work was to have been completed. Even with such a broad arbitration clause as paragraph 16, how could there be any doubt that Drake had only the right to a certain specific piece of property as his compensation under the contract?

▮ Although every presumption is in favor of the award (*Popcorn Equip. Co.* v. *Page*, 92 Cal.App.2d 448 [207 P.2d 647]) and mere unsound reasoning by an arbitrator in reaching a conclusion within the scope of proper arbitration will not invalidate the result (*McKay* v. *Coca-Cola Bottling Co.*, 110 Cal.App.2d 672 [243 P.2d 35]) an award is properly vacated when arbitrators exceed their powers. (See *Screen Cartoonists Guild* v. *Walt Disney Productions*, 74 Cal.App.2d 414 [168 P.2d 983]; *Bierlein* v. *Johnson*, 73 Cal.App.2d 728 [166 P.2d 644].)

The judgment is reversed.

McComb, J., and Fox, J., concurred.