[L. A. No. 23552.   In Bank.   Oct. 9, 1956.]

CHARLES W. FOUST, Respondent, v. ISMAY M. FOUST, Appellant.

Richard A. Ibanez for Appellant.

Herman Wildman for Respondent.

SPENCE, J.—Defendant appeals from an order quashing execution and restraining the sheriff from selling plaintiff's property. The only question to be determined is whether a property settlement agreement had been so merged into an annulment decree that its provision for monthly payments became an operative part thereof, enforceable by execution. The trial court held that it had not but the record does not sustain its ruling.

The parties separated 14 years after their marriage. Plaintiff husband then commenced this action for ''annulment of marriage and determination of property rights.'' Defendant wife cross-complained for divorce and the settlement of property rights. Thereafter and on July 21, 1943, the parties entered into a property settlement agreement and stipulated that an annulment decree might be entered declaring the marriage null and void from its inception. The property settlement agreement provided, among other things, that plaintiff pay defendant $50 a month for life or until her remarriage. The agreement was attached as an exhibit to the stipulation, and both documents were filed with the court. The annulment decree was entered July 22, 1943. Following the wording of the stipulation, the decree ordered and adjudged: ''That the properties and property rights of

plaintiff and defendant herein are adjusted, settled and distributed as per the terms and conditions of that certain AGREEMENT dated July 21st, 1943, executed by plaintiff and defendant herein, a full and true copy of which AGREEMENT is on file herein attached to said Stipulation marked 'Exhibit "A," ' and which is hereby approved by the Court and by this reference embodied in and made a part of this Judgment.''

Plaintiff failed to make the prescribed payments and became indebted to defendant in the sum of $2,405. Upon affidavit setting forth plaintiff's default, defendant procured the issuance of a writ of execution on June 21, 1954. After levy had been made by the sheriff on plaintiff's property, plaintiff made a motion to quash the writ, based upon his affidavit reciting the circumstances of the parties' agreement. Both parties in their affidavits referred to the agreement as ''embodied in and made part of the judgment.'' The court granted the motion, thereby holding that the parties' agreement had not merged in the decree so as to be enforceable by execution. We have concluded that the trial court's order granting the motion must be reversed.

█ The nature of the agreement, its attachment to the stipulation for judgment, the filing of both documents with the court, and the plain language of the stipulation and the judgment entered thereon make the conclusion inescapable that merger was intended, thereby substituting rights and duties under the decree for those under the agreement. (See Rest., Judgments, § 47, com. a; *Flynn* v. *Flynn,* 42 Cal.2d 55, 58 [265 P.2d 865]; *Hough* v. *Hough,* 26 Cal.2d 605, 609-610 [160 P.2d 15]; 1 Armstrong, California Family Law, pp. 810-811.) █ Since there is no evidence to the contrary, the trial court's conclusion that merger was not intended is not binding on this court. (*Fox* v. *Fox,* 42 Cal.2d 49, 52 [265 P.2d 881]; *Estate of Platt,* 21 Cal.2d 343, 352 [131 P.2d 825].)

It was held in the Flynn case that incorporation of a property settlement agreement into a decree by reference does not preclude a merger. (*Flynn* v. *Flynn, supra,* p. 59.)

█ When an agreement has been incorporated into a decree, it is as effectively a part thereof as if recited therein *in haec verba.* It is of no consequence here that the agreement was complete in itself, for it lost its identity in the decree. It is now the decree that declares the rights and obligations of the parties, for it ''ordered and adjudged . . . that the prop-

erties and property rights of [the parties] are adjusted, settled and distributed as per the . . . agreement . . . and which is hereby approved by the court and by this reference embodied in and made a part of this judgment."

Nor is the decree lacking in potency to support the execution process because the precise terms of plaintiff's monetary obligations do not appear on its face. Execution has been defined as "a process in an action to carry into effect the directions in a decree or judgment." (*Painter* v. *Berglund,* 31 Cal.App.2d 63, 69 [87 P.2d 360].) It has been allowed in enforcement of the provisions of settlement agreements where compliance was ordered by the decree. (*Di Corpo* v. *Di Corpo,* 33 Cal.2d 195, 201 [200 P.2d 529]; *Cochrane* v. *Cochrane,* 57 Cal.App.2d 937, 938 [135 P.2d 714]; *Shields* v. *Shields,* 55 Cal.App.2d 579, 582 [130 P.2d 982].) While the decree should state with certainty the amount to be paid (28 Cal.Jur.2d, § 76, p. 710; *Kittle* v. *Lang,* 107 Cal.App.2d 604, 612 [237 P.2d 673]; *Wallace* v. *Wallace,* 111 Cal.App. 500, 506-507 [295 P. 1061]; *D'Arcy* v. *D'Arcy,* 89 Cal.App. 86, 92 [264 P. 497]), it is sufficient if the amount may be definitely ascertained by an inspection of the record. (49 C.J.S. § 76, pp. 198-199.) Thus, the amount for which a judgment was rendered may be aided by reference to the pleadings in the case or the verdict. (1 Freeman on Judgments, 5th ed., § 84, pp. 148-149.) Likewise here, the monthly payments owing by plaintiff as adjudged by the decree may be ascertained from the parties' agreement, which was attached to their stipulation for judgment and filed as part of the record.

Plaintiff unavailingly relies on cases involving the enforcement of support decrees by contempt proceedings, requiring therefor an express order to pay the money due. (E.g. *Plummer* v. *Superior Court,* 20 Cal.2d 158, 163 [124 P.2d 5]; *Miller* v. *Superior Court,* 9 Cal.2d 733, 737-740 [72 P.2d 868].) Contempt proceedings are criminal in nature, and the prescribed procedural safeguards must be accorded the alleged contemner. (*City of Culver City* v. *Superior Court,* 38 Cal.2d 535, 541 [241 P.2d 258].) The prime purpose of such proceedings is punishment for disobedience of a valid order directing performance of a specified act. Liability for such drastic punishment "should not rest upon implication or conjecture" but rather upon an order expressing in "clear, specific and unequivocal" language the act required. (*Plummer* v. *Superior Court, supra,* p. 164.) It was therefore said in the Flynn case that "greater certainty

and clarity may be required to support [contempt] proceedings than are necessary to support other judgment remedies. . . ." (*Flynn* v. *Flynn, supra,* 42 Cal.2d 55, 60.)

Whenever it is intended that a property settlement agreement shall become merged in the decree, it is undoubtedly the better practice to have the terms of the agreement set forth *in haec verba* in the decree or by way of exhibit attached thereto, and to have the court employ explicit language in the decree showing that the rights and obligations of the parties are adjudicated by the decree in accordance with the terms of the agreement. And while "greater certainty and clarity" may well be required to support contempt proceedings, we are satisfied that the language of the decree here shows that the agreement, filed with the stipulation, was merged in the decree, and that the manner in which the merger was effected makes the decree sufficiently certain to render it enforceable by execution. To hold otherwise would require the parties to engage in needless further litigation to merge the agreement into another decree or judgment in order to obtain the enforcement thereof by any legal process. Such idle act should not be required.

The order appealed from is reversed.

Gibson, C. J., Traynor, J., and Peters, J., pro tem,* concurred.

CARTER, J.—I dissent.

The majority opinion holds that the property settlement agreement involved here was so incorporated in the annulment decree that its provisions for monthly payments are enforceable by the issuance of a writ of execution on the decree. The property settlement agreement was *attached as an exhibit to a stipulation* entered into by the parties that their marriage was null and void from the beginning. The annulment decree provided: "That the properties and property rights of plaintiff and defendant herein are adjusted, settled and distributed as per the terms and conditions of that certain AGREEMENT dated July 21st, 1943, executed by plaintiff and defendant herein, a full and true copy of which AGREEMENT is on file herein attached to said Stipulation marked 'Exhibit "A,"'' and which is hereby approved by the Court and by this reference embodied in and made a part of this judgment."

---

*Assigned by Chairman of Judicial Council.

It is said in the majority opinion, relying upon the case of *Flynn* v. *Flynn,* 42 Cal.2d 55 [265 P.2d 865], that "The nature of the agreement, its attachment to the stipulation for judgment, the filing of both documents with the court, and the plain language of the stipulation and the judgment entered thereon make the conclusion inescapable that merger was intended, thereby substituting rights and duties under the decree for those under the agreement." The judgment in the case under consideration contains no order of any kind save the order that the marriage of the plaintiff and defendant is "hereby annulled and decreed null and void from its inception." In the Flynn case, *supra,* the interlocutory decree specifically provided that "defendant is hereby *ordered* to make all of the payments provided therein [agreement] to be paid by him . . . and plaintiff and defendant are hereby ordered to comply in all respects with each and all of the terms and provisions of said agreement and to perform all their obligations thereunder as therein provided." In that case a majority of this court said (at page 58) : "The question to what extent, if any, a merger has occurred, when a separation agreement has been presented to the court in a divorce action, arises in various situations. Thus, it may be necessary to determine whether or not contempt will lie to enforce the agreement, whether or not other judgment remedies, such as execution or a suit on the judgment are available, whether or not an action may still be maintained on the agreement itself, and whether or not there is an order of the court that may be modified under the provisions of section 139 of the Civil Code.

"In any of these situations it is first necessary to determine whether the parties and the court intended a merger. If the agreement is expressly set out in the decree, and the court orders that it be performed, it is clear that a merger is intended. (*Plummer* v. *Superior Court,* 20 Cal.2d 158, 165 [124 P.2d 5] ; *Lazar* v. *Superior Court,* 16 Cal.2d 617, 620 [107 P.2d 249].) . . . In the absence of an express order to perform all or part of the agreement, it may be difficult to determine whether or not a merger was intended."

I, of course, am firmly of the opinion that if the decree does not embody the agreement either in substance or *in haec verba,* or unless a copy of the agreement is physically attached to the decree, it is not an operative part of it and may not be enforced as a part of the decree. "This is true even though the agreement may have been introduced in evidence and

approved by the court. If the agreement is merely introduced in evidence as an exhibit, as it undoubtedly was here [42 Cal.2d 55, 63], it could be withdrawn or destroyed and interested parties could not, by searching the records of the court 'construct a complete picture of the rights and obligations of the parties' (*Price* v. *Price*, 85 Cal.App.2d 732, 735 [194 P.2d 101])."

Exhibits may be, and as a matter of practice usually are, withdrawn, and thus are no longer a matter of record which may be "inspected." When Exhibit "A" in the instant case is withdrawn there is nothing whatsoever in the judgment to show the rights and liabilities of the parties. In a case such as this, where there is no incorporation and no order of the court directing compliance with any of the provisions of the agreement, any action for relief must be on the agreement itself which should be accorded the same dignity as other contracts, but not the same dignity as a judgment of a court of record. There are here no "directions in a decree or judgment" (*Painter* v. *Berglund*, 31 Cal.App.2d 63, 69 [87 P.2d 360]); there was no order to comply with the provisions of a settlement agreement in the decree (*Di Corpo* v. *Di Corpo*, 33 Cal.2d 195, 201 [200 P.2d 529]; *Cochrane* v. *Cochrane*, 57 Cal.App.2d 937, 938 [135 P.2d 714]; *Shields* v. *Shields*, 55 Cal.App.2d 579, 582 [130 P.2d 982]); the decree did not state with certainty the amount to be paid plaintiff (28 Cal. Jur.2d, § 76, p. 710), and since exhibits are ordinarily withdrawn, the amount to be paid would be a matter of speculation and conjecture. Why not just take the complaining party's word for what the defendant owes? The majority holding here will lead to endless difficulty—affidavits and counteraffidavits will have to be filed setting forth the terms of the property settlement agreement since those terms are not matters of record. In every instance, since the majority has held, and continues to hold, that it is a question of fact whether the court and the parties intended an incorporation, that matter will have to be determined and then redetermined by an appellate court and finally by this court which can say, blandly and without even a tinge of conscience, that "Since there is no evidence to the contrary, the trial court's conclusion [or the appellate court's conclusion] that merger was not intended is not binding on this court. (*Fox* v. *Fox*, 42 Cal.2d 49, 52 [265 P.2d 881]; *Estate of Platt*, 21 Cal.2d 343, 352 [131 P.2d 825].)" It is obvious from the concluding paragraph of the majority opinion that even the majority of this court

feel apologetic about what is being done in this case. It is said: "Whenever it is intended that a property settlement agreement shall become merged in the decree, *it is undoubtedly the better practice to have the terms of the agreement set forth in haec verba in the decree or by way of exhibit attached thereto, and to have the court employ explicit language in the decree showing that the rights and obligations of the parties are adjudicated by the decree in accordance with the terms of the agreement.*" (Emphasis added.)

By a sort of roundabout reasoning it is also concluded here that while (speaking of the contempt process) "Liability for such drastic punishment 'should not rest upon implication or conjecture' but rather upon an order expressing in 'clear, specific and unequivocal' language the act required (*Plummer* v. *Superior Court, supra* [20 Cal.2d 158, 163], p. 164)," implication and conjecture may be indulged in where merely the execution process is involved. Apparently, by implication, we are to assume that execution may be utilized by indulging in conjecture and speculation even though there is no clear, specific and unequivocal language in the decree. No other conclusion can be reached when the facts of this case are taken into consideration.

In the instant case, as has been heretofore noted, the property settlement agreement was attached merely to the stipulation—not to the judgment—and the agreement and stipulation were described as Exhibit "A." We said in *Bank of America* v. *Standard Oil Co.*, 10 Cal.2d 90, 94 [73 P.2d 903], that "As between the petitioner and the ranch company, the judgment which is now on appeal is only an adjudication that the owners of the bonds originally secured by the deed of trust, or their successors, are entitled to the trust fund as against other claimants. It does not completely fix the liability of the petitioner to the ranch company. 'A final decree in equity must state in plain figures the amount which a party must pay in the way both of debt or damages and costs, as well as every other matter adjudicated.' [Citations.] When the amount is not so stated and does not appear in the judgment roll, it cannot be supplied by an affidavit submitted *ex parte*. The superior court had no authority to order a writ of execution to issue upon the facts stated in the affidavit made on behalf of the ranch company and its writ should be recalled." It was also said: "Before an execution may properly issue the judgment must be for money and the amount due and the persons to whom payable must be

determined with exactness. (Code Civ. Proc., § 682; *Feldmeier* v. *Superior Court,* 12 Cal.2d 302, 307 [83 P.2d 929, 119 A.L.R. 927]; *Bank of America* v. *Standard Oil Co.,* 10 Cal.2d 90 [73 P.2d 903].) The judgment of the superior court went no further than to approve the arbitration award. . . . It is thus clear that the money due could not be determined from the judgment. . . . Thus, the execution was improperly issued for the reason that by the judgment plaintiff McKay was not entitled to any money, nor was the amount due the employees and their identity fixed by the judgment." (*McKay* v. *Coca-Cola Bottling Co.,* 110 Cal.App. 2d 672, 677 [243 P.2d 35].) This, contrary to certain language in the majority opinion, is not a case where the amount may be determined from the pleadings or the verdict.

The majority opinion in this case goes farther than any of the other ill-considered decisions of this court in this field (*Fox* v. *Fox,* 42 Cal.2d 49 [265 P.2d 881]; *Flynn* v. *Flynn,* 42 Cal.2d 55 [265 P.2d 865]; *Dexter* v. *Dexter,* 42 Cal.2d 36 [265 P.2d 873]; *Messenger* v. *Messenger,* 46 Cal. 2d 619, 630 [297 P.2d 988]) since here there was no incorporation of the agreement whatsoever nor any order by the court directing compliance therewith. Yet it is held that an incorporation was "intended" and that execution may issue.

For the reasons heretofore set forth, I would affirm the order.

SCHAUER, J., Dissenting.—As stated in the majority opinion, "The only question to be determined is whether a property settlement agreement had been so merged into an annulment decree that its provision for monthly payments became an operative part thereof, enforceable by execution. The trial court held that it had not . . ." The majority reverse.

In my view the record as related in the majority opinion supports, and the better practice requires, the conclusion reached by the trial court. (See *Messenger* v. *Messenger* (1956), 46 Cal.2d 619, 637-638 [297 P.2d 988]; *Flynn* v. *Flynn* (1954), 42 Cal.2d 55, 61-62 [265 P.2d 865].) Accordingly, I would affirm the judgment.

SHENK, J., Dissenting.—I concur in the reasoning and conclusions of Mr. Justice Carter in his dissenting opinion.

I desire to emphasize that this proceeding was commenced by the application by Mrs. Foust for a citation directed to Mr. Foust to show cause why he should not be punished for contempt for failure to pay past due support payments provided for in a property settlement agreement incorporated by reference in the annulment decree. A citation for contempt was signed by a judge of the superior court and the matter was referred to a commissioner. It was doubtless obvious to the trial court that the proceeding was not properly one in contempt for the reason that no order of court had been violated. However, a writ of execution was issued for the amount of the delinquent payments as shown by the affidavit of Mrs. Foust. This amount could be ascertained only by an examination of that document and the property settlement agreement in which Mr. Foust had agreed to pay $50 per month during the life of Mrs. Foust or until her lawful remarriage. Nowhere in the decree is there an order that Foust pay a definite or any sum of money as support or for such other purpose, nor is there any provision in the decree to carry into effect or directing compliance with the property settlement agreement. There was therefore no order or judgment of the court upon which execution could issue, and the order quashing the writ should be sustained.