[Civ. No. 23510.   Second Dist., Div. One.   Mar. 6, 1959.]

FIRESTONE TIRE AND RUBBER COMPANY (a Corporation), Respondent, v. UNITED RUBBER WORKERS OF AMERICA, LOCAL UNION NUMBER 100, AFL-CIO et al., Appellants.

Tobriner, Lazarus, Brundage & Neyhart and James Wolf for Appellants.

Trippet, Yoakum, Stearns & Ballantyne and Charles Stearns for Respondent.

FOURT, J.—This is an appeal from an order denying the appellant's application for an order confirming an arbitration award and granting the motion of respondent for an order vacating the award.

Arbitration proceedings were held between Firestone Tire and Rubber Company, Los Angeles, California, respondent (hereinafter referred to as the Company) and United Rubber Workers of America, Local Union No. 100, AFL-CIO, appellant (hereinafter referred to as the Union), to resolve a dispute between them with reference to the matter of certain wages of certain persons who were employed by the Company and who were members of the Union.

There was an agreement made and entered into between the Company and the Union in November, 1956, and which was, by further agreement, supplemented from time to time. That agreement at the times with which we are here concerned provided under article XI titled, "Procedure for Adjustment of Grievances," in part as follows:

"*Section 2*

"(a) The final step in the grievance procedure shall be arbitration, which shall be conducted as follows:

"(1)(a) A representative of the Company and the President of the Local Union shall select an impartial arbitrator for any grievance to be arbitrated at the respective local plant. The impartial arbitrator shall hear and determine grievances, either alone or by mutual agreement of the Company and the Local Union contained in the Supplementary Agreement negotiated at the local plant level, as the chairman of a three-man board of arbitration consisting, in addition to such impartial arbitrator, of one member appointed by the Company and one by the Local Union.

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"(2) In the event that any grievance concerning the interpretation or application of this Agreement or any local plant Supplementary Agreement, excepting such grievances as are not arbitrable hereunder, is not satisfactorily settled through the procedure outlined in the local plant Supplementary Agreement, it shall be submitted to arbitration upon written notice to the Company, with a copy to the impartial arbitrator selected in accordance with (1)(a) or (b) above. The grievance to be arbitrated shall be identified and described in said written request.

.  .  .  .  .  .  .  .  .  .  .  .  .  .

"(6) The impartial arbitrator or board of arbitration shall have no power to add to, subtract from, or modify any provision of this Agreement or any Supplementary Agreement negotiated at the local plant level. It is understood that matters involving the general wage scale or differentials in base rates for pieceworkers and maximum daywork rates for dayworkers which are established at the effective date of this Agreement shall not be a subject for arbitration."

The agreement also provided, under article VI titled "Wage Application Provisions," in part as follows:

"*Section* 14-S

"A dayworker taken from his regular classification at the request of Management to fill a temporary vacancy on another classification shall be paid either his piecework earnings, his Basic Wage Rate, or the Basic Wage Rate of the temporary classification, whichever is the highest, provided a reasonable effort is put forth under the existing conditions. While a dayworker is temporarily assigned to a piecework classification under the above condition, the provisions of Article VII shall be applicable."

The board of arbitration in question was selected pursuant

to the agreement of the parties, consisting of a representative of the Company, a representative of the Union and a neutral arbitrator. The issue to be arbitrated was stated in writing to be ''What is the applicable rate of pay for a Lathe and Mill Machinist, Job 3-41, when he is temporarily working as a Turret Lathe Machinist, Job 3-87?''

A hearing was held by the board of arbitration and the arbitrators set forth, in their report, that among the classifications in Department 3B there are the following:

| | |
|---|---|
| General Machinist . . . . | Wage Rate—$2.55 per hour |
| Turret Lathe Machinist . . | '' '' — 2.49 '' '' |
| Lathe and Mill Machinist . | '' '' — 2.49 '' '' |

The decision of the arbitrators was as follows:

''The applicable rate of pay for a Lathe and Mill Machinist when temporarily working as a Turret Lathe Machinist is the General Machinist rate.''

The Company appointed arbitrator dissented from the decision. The Union made a motion and application for an order to confirm the arbitration award. The Company filed a memorandum in opposition to the motion to confirm the award and made a motion to vacate the award under the provisions of section 1288, Code of Civil Procedure.

The trial court made an order wherein it denied the motion of the Union to confirm the award, and granted the motion of the Company to vacate the award. The memorandum prepared by the trial judge at the time of his decision discloses that he was of the belief that the award as made was not within the power of the board of arbitration.

The appeal is from that order.

The Union contends that:

(a) the merits of the award are not subject to review, and

(b) the award was within the power of the board of arbitration.

There is, under the particular circumstances of this case, no contention upon the part of the Company that the merits of the award are subject to review.

Each side essentially agrees that the only question for determination is whether the arbitrators disregarded the terms of their employment and the scope of their authority as set forth in the arbitration contract.

We believe the trial court was correct in vacating the order. The question as submitted to the arbitration board was

precisely and concisely stated. The language used was clear and even specified the particular job classifications by number and designation. Reduced to the simplest of terms, the question put was, what is the applicable rate of pay for an employee in classification A (lathe and mill machinist) when he is temporarily working in classification B (turret lathe machinist)?

The agreement between the Union and the Company (art. VI, § 14-S) provided in effect that when an employee in classification A is temporarily assigned to classification B, he shall receive the rate of pay of classification A, or of classification B, whichever is higher. The agreement did not provide that a board of arbitration can decide that while so temporarily employed in classification B, the employee shall receive the rate of pay of classification C (general machinist).

There is no question here as to any classifications of jobs, or as to whether the employees in question were dayworkers (hourly workers) paid as provided for in article VI, section 1(b) of the agreement.

█ The arbitration board in this case, in effect, took upon itself the authority of deciding to which classification the employee (the lathe and mill machinist) was temporarily transferred. The parties previously had determined that matter in the agreement and it was so set forth in the question which was to be decided by the board (namely from classification Job 3-41 to classification Job 3-87) and the board had no authority to make such a determination. In other words, the board attempted to add to, subtract from or modify the contract of the parties in excess of the powers expressly conferred upon it. (See *Crofoot* v. *Blair Holdings Corp.*, 119 Cal.App.2d 156, 184 [260 P.2d 156]; *Christenson* v. *Cudahy Packing Co.*, 198 Cal. 685, 692 [247 P. 207]; *Screen Cartoonists Guild* v. *Walt Disney Productions*, 74 Cal.App.2d 414 [168 P.2d 983].)

█ It was appropriately said in *Drake* v. *Stein*, 116 Cal. App.2d 779 (at p. 785) [254 P.2d 613]:

"Arbitrators are not bound to a strict adherence to legal procedures. They are not required to find facts, give reasons for their awards, or describe the processes by which they arrived at their decisions. (*Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.*, 29 Cal.2d 228, 232 [174 P.2d 441].) █ But they are not, because of such freedom, released from the obligation to be guided by the basic agreement of the litigants. When appellants agreed in clear and unambiguous language

to transfer a specific parcel of real estate and a policy of title insurance for the faithful performance of certain services by respondent it was not intended thereby to authorize the future arbitrators to award something else to respondent in case of an arbitration. But that is exactly what was done by . . . [the arbitrator]. Instead of the lot, he awarded to respondent the sum of $7,500 in cash. . . . Even with such a broad arbitration clause as paragraph 16, how could there be any doubt that Drake had only the right to a certain specific piece of property as his compensation under the contract?

"Although every presumption is in favor of the award (*Popcorn Equip. Co.* v. *Page*, 92 Cal.App.2d 448 [207 P.2d 647]) and mere unsound reasoning by an arbitrator in reaching a conclusion within the scope of proper arbitration will not invalidate the result (*McKay* v. *Coca-Cola Bottling Co.*, 110 Cal.App.2d 672 [243 P.2d 35]) an award is properly vacated when arbitrators exceed their powers. (See *Screen Cartoonists Guild* v. *Walt Disney Productions*, 74 Cal.App.2d 414 [168 P.2d 983]; *Bierlein* v. *Johnson*, 73 Cal.App.2d 728 [166 P.2d 644].)"

The Union relies heavily upon three cases, namely, *Straus* v. *North Hollywood Hospital, Inc.*, 150 Cal.App.2d 306 [309 P.2d 541], *Lang* v. *Badger*, 157 Cal.App.2d 345 [320 P.2d 906], and *McKay* v. *Coca-Cola Bottling Co.*, 110 Cal.App.2d 672 [243 P.2d 35]. In our opinion, none of the cases is particularly helpful to the appellant. In none of the cases cited are the facts comparable to the facts in the instant case.

In the Straus case, *supra*, an award was made that the contract between the hospital and the doctor be terminated, and that the doctor should receive from the hospital a certain money payment. The hospital, in contesting the award, said that it agreed to the termination of the contract and admitted that "the submission agreement 'would permit a cash award under the circumstances.'" The contract of the parties did not preclude the granting of the money award, and therefore, the arbitrators acted within their authority in that respect. In the case presently before us for decision, the parties expressly prescribed the factual elements which the board could consider, and by their agreement they expressly provided the hourly pay scale. (Art. VI, § 14-S.) As said in the Straus case, *supra*, at pages 309 and 310, "An arbitration proceeding is grounded in the mutual assent of the disputants to the resolution of their controversy by such tri-

bunal, and *the arbitrators derive their power from the submission agreement.*'' (Emphasis added.)

In *Lang* v. *Badger*, 157 Cal.App.2d 345 [320 P.2d 906], the question which was submitted to the arbitrators was not concise and precise, as in the instant case. In Lang, *supra*, the parties stipulated (p. 348) '' 'that any and all disputes which have arisen by reason of that certain building contract . . . will be submitted to arbitration in accordance with said . . . contract, . . .' '' The building contract provided that (p. 347) ''all questions [under the contract] are subject to arbitration.'' This court, under the circumstances of Lang, *supra*, namely a vague, unqualified arbitration contract) applied liberal rules of interpretation. There is nothing vague or indecisive in the instant contract or the submission agreement presently before us.

In *McKay* v. *Coca-Cola Bottling Co., supra*, the court simply held that although the reasoning used by the arbitrators was bad, their award was, in fact, within the authority granted them by the parties.

As stated in *Drake* v. *Stein, supra*, at page 785, ''Although . . . mere unsound reasoning by an arbitrator in reaching a conclusion within the scope of proper arbitration will not invalidate the result (*McKay* v. *Coca-Cola Bottling Co.*, 110 Cal.App.2d 672 [243 P.2d 35]) an award is properly vacated when arbitrators exceed their powers.''

The Union accuses the Company of bad faith in moving to vacate the award, claiming in effect that if the Company was of the view that there was only one answer to the question it should not have permitted the matter to go to arbitration. Most litigants are fairly strong in their belief that their views are the correct views and that any other view is contrary to the law and the facts. ▮ It would seem that although one of the parties is absolutely certain that there is only one correct answer to a dispute, that the dispute may, nevertheless, be arbitrable. In *Butte Miners' Union No. 1* v. *Anaconda Co.*, 159 F.Supp. 431, the court was confronted with an argument that no arbitrable dispute existed because the company had a perfect contractual defense to the claim of the union. In ordering arbitration, the court said (at p. 436):

''It is also urged by defendant that no bona fide dispute exists because the pension plan by its terms requires the termination of employment of employees 68 years of age or older, even though they are not entitled to a pension. While

a frivolous or patently baseless claim should not be ordered to arbitration, *Local 205, etc.* v. *General Electric,* 1 Cir., 233 F.2d 85, the controversy here is not of that type. Indeed, defendant admits that a dispute exists but in effect argues that because it has a defense in the pension agreements to the claim of plaintiffs that it is not a bona fide dispute. The fact that a defense may exist to a claim does not make the claim frivolous or baseless, and the validity of the defense should be decided by the tribunal to which the parties have agreed to submit their disputes—in this case, the arbitrators—and the Court should not usurp that function under the guise of determining whether there is an arbitrable issue."

And in *Arbitration Between Potoker and Brooklyn Eagle,* 2 N.Y.2d 553 [141 N.E.2d 841], the court said (at p. 844 [141 N.E.2d]) : ". . . the issue is not whether petitioner is right, but whether it is entitled to have the issues determined in the forum (arbitration) designated in the agreement."

One writer expressed the view in 30 Rocky Mountain Law Review, 247, 261, in referring to a typical arbitration clause in collective bargaining agreements, as follows:

". . . Its words do not restrict its scope to meritorious disputes or two-sided disputes, still less are they limited to disputes which a judge will consider two-sided. Frivolous cases are often taken, and are expected to be taken, to arbitration. What one man considers frivolous another may find meritorious, and it is common knowledge in industrial relations circles that grievance arbitration often serves as a safety valve for troublesome complaints. Under these circumstances it seems proper to read the typical arbitration clause as a promise to arbitrate every claim, meritorious or frivolous, which the complainant bases upon the contract. The objection that equity will not order a party to do a useless act is outweighed by the cathartic value of arbitrating even a frivolous grievance and by the dangers of excessive judicial intervention."

■ The policy in this state is to favor arbitration. (*O'Malley* v. *Petroleum Maintenance Co.,* 48 Cal.2d 107 [308 P.2d 9] ; *Myers* v. *Richfield Oil Corp.,* 98 Cal.App.2d 667, 671 [220 P.2d 973] ; *United States Plywood Corp.* v. *Hudson Lumber Co.,* 124 Cal.App.2d 527, 530 [269 P.2d 93].)

The order is affirmed.

White, P. J., and Lillie, J., concurred.