[Civ. No. 24160. Second Dist., Div. Two. Apr. 21, 1960.]

LEW LAURIA et al., Appellants, v. RAPHAEL SORIANO, Respondent.

Palmer & Long and Alvan M. Palmer for Appellants.

Macbeth, Ford, Brady & Loveridge and Owen J. Brady for Respondent.

ASHBURN, J.—Plaintiffs appeal from an order confirming an award of arbitrators and denying plaintiffs' motion to vacate the award (Code Civ. Proc., § 1293; 3 Witkin on California Procedure, § 16, pp. 2159-2160).

On June 13, 1956, plaintiffs Lew Lauria and Maybelle Lauria, as owners, and defendant Raphael Soriano, as architect, entered into a written contract whereby Soriano agreed to perform architectural services in connection with the construction of a residence for the Laurias. The architect's compensation was fixed at 12½ per cent of the cost of the work, but the instrument is silent upon maximum cost or any estimate of same. Appellants claim that it was orally agreed that the building would cost not more than approximately $60,000. The architect billed them for sums aggregating $5,833.11, which total sum was paid; it amounts to 75 per cent of 12½ per cent of $62,220,[1] and appellants claim that the

---

[1] The contract contains these provisions: "5. *Payments.*—Payments to the Architect on account of his fee shall be made as follows, subject to the provisions of Article 4:

"Upon completion of the preliminary studies, a sum equal to 25% of the basic rate computed upon a reasonable estimated cost.

"During the period of preparation of specifications and general working drawings monthly payments aggregating at the completion thereof

last mentioned sum necessarily was the architect's own estimate of the cost. When bids were taken they ran from $110,000 down to $89,000 and then to $85,400. The Laurias declared such a house to be beyond their means and the plans and specifications and working drawings to be without value to them.

They sued the architect for return of the $5,833.11 which they had paid him, alleging an agreement that the "final plans would result in a structure that could be completed for approximately $60,000.00"; that the lowest bid was $110,000 and after certain eliminations from the plans the lowest bid was $89,000, "still beyond plaintiffs' financial capacity"; that the plans were never used and plaintiffs received no benefit from them. Fraud and failure of consideration were alleged.

The contract contains this paragraph 12: "*Arbitration.*—All questions in dispute under this agreement shall be submitted to arbitration at the choice of either party, in accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedure of The American Institute of Architects." Before any plea was interposed by defendant he noticed a motion for an order staying further proceedings in the action until an arbitration had been had pursuant to the terms of the contract. Upon the return day, May 1, 1958, the motion was placed off calendar pursuant to stipulation. The matter then proceeded to arbitration before Messrs. Harry W. Elliott, Ira S. Brander and Raymond D. Spencer, and they made an award on December 17, 1958, to the effect that Soriano's claim of right to retain the $5,833.11 was upheld and "[t]hat there was no fraud or failure of consideration for such payments to Soriano, but that Soriano's professional services as an architect were of the value of the amount paid him." Defendant moved for confirmation of the award and plaintiffs moved to vacate it. The court confirmed and refused to vacate; hence this appeal.

Appellants' contentions meet insuperable obstacles in settled legal principles applicable to arbitrations. We are handicapped in their consideration by the fact that we have before

a sum sufficient to increase payments to 75% of the rate or rates of commission arising from this agreement, computed upon a reasonable cost estimated on such completed specifications and drawings, or if bids have been received, then computed upon the lowest bona fide bid or bids."

"8. *Preliminary Estimates.*—When requested to do so the Architect will furnish preliminary estimates on the cost of the Work, but he does not guarantee such estimates."

us no order of court and no submission agreement of the parties defining the issues to be arbitrated. ▉ "It is the rule that 'The powers of an arbitrator are limited and circumscribed by the agreement or stipulation of submission (*Bierlein* v. *Johnson*, 73 Cal.App.2d 728, 733 [166 P.2d 644]).' " (*O'Malley* v. *Petroleum Maintenance Co.*, 48 Cal. 2d 107, 110 [308 P.2d 9].) It may be that we would be warranted in assuming (as in *Drake* v. *Stein*, 116 Cal.App.2d 779, 782 [254 P.2d 613]) that paragraph 12 of the contract is to be "properly interpreted as both a 'future disputes agreement' . . . within section 1280 of the Code of Civil Procedure, and a complete though broad 'submission agreement' "; and that the issues submitted were "[a]ll questions in dispute under this agreement," which language still leaves us upon an uncharted sea. An affidavit of appellants' attorney, which was presented in support of the motion to vacate, says: "A copy of the Complaint filed in the instant action was handed to the Arbitrators for their inspection and determination of the issues in the case." Counsel for both sides have briefed the case in such manner that we will assume, as appellants contend, that "[t]he issue in this case, without doubt, was whether or not Soriano agreed to draw plans and specifications for a building to cost approximately $60,000.00."

Returning to the contention that Soriano did not furnish plans and specifications in accordance with the contract between him and appellants, it appears that the arbitrators not only made the finding as to consideration which is above quoted, but also found: "That Soriano, after many conferences, prepared a set of plans and specifications for a residence which was approved by the Laurias and bids for the construction of a residence according to the plans and specifications prepared by Soriano were solicited by the Laurias from several contractors. However, because the bids were higher in cost than the Laurias were willing to spend, no bid was accepted and no contract for construction of the residence was entered into." ▉ Thus it becomes plain that appellants' argument goes to the merits of the decision. That is a matter which the court is not entitled to review.

▉ *Crofoot* v. *Blair Holdings Corp.*, 119 Cal.App.2d 156, 185-186 [260 P.2d 156]: "[I]t is well settled that both before the superior and appellate courts every intendment of validity must be given the award and that the burden is upon the one claiming error to support his contention. [Cita-

tion.] It has been held that the arbitrator need not make findings or give reasons for his conclusions. [Citation.] Certainly it is settled that the courts have no power to review the sufficiency of the evidence. [Citations.] The law is not quite so clear as to a court's powers of review over questions of law. . . . In *Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.*, 29 Cal.2d 228, 233 [174 P.2d 441], it was bluntly held that 'The merits of the controversy between the parties are not subject to judicial review.' In *Sapp* v. *Barenfeld*, 34 Cal.2d 515, 523 [212 P.2d 233], the court held: 'Even though a party expressly asserts a lawful claim in the submission or raises it by the presentation of evidence to the arbitrators, the law does not guarantee that the claim will be allowed. Arbitrators, unless specifically required to act in conformity with rules of law, may base their decision upon broad principles of justice and equity, and in doing so may expressly or impliedly reject a claim that a party might successfully have asserted in a judicial action.' . . . ■ Under these cases it must be held that in the absence of some limiting clause in the arbitration agreement, the merits of the award, either on questions of fact or of law, may not be reviewed except as provided in the statute." Among the many authorities to the same effect are *O'Malley* v. *Petroleum Maintenance Co., supra,* 48 Cal.2d 107, 111; *Straus* v. *North Hollywood Hospital, Inc.,* 150 Cal.App.2d 306, 310 [309 P.2d 541]; *Sampson Motors, Inc.* v. *Roland,* 121 Cal.App.2d 491, 494 [263 P.2d 445]; *United States Plywood Corp.* v. *Hudson Lumber Co.,* 124 Cal.App.2d 527, 530 [269 P.2d 93].

The claim that there was a failure to find upon the true issue because the arbitrators did not specifically mention the alleged agreement to prepare plans and specifications for a building to cost only $60,000, must fail of fruition. ■ Arbitrators are not required to make findings or assign reasons; if they state erroneous reasons for their conclusion that is not fatal. (*O'Malley* v. *Petroleum Maintenance Co., supra,* p. 111; *McKay* v. *Coca-Cola Bottling Co.,* 110 Cal.App.2d 672, 677 [243 P.2d 35].) ■ Moreover, every reasonable intendment must be indulged in favor of the award. (*Drake* v. *Stein, supra,* 116 Cal.App.2d 779, 785; *Crofoot* v. *Blair Holdings Corp., supra,* 119 Cal.App.2d 156, 185; *United States Plywood Corp.* v. *Hudson Lumber Co., supra,* 124 Cal.App.2d 527, 532.) ■ And it is presumed that all matters within the submission have been passed upon. (*Sampson Motors, Inc.* v. *Roland, supra,* 121 Cal.App.2d 491, 494-495; *Crofoot* v.

*Blair Holdings Corp., supra,* 119 Cal.App.2d 156, 192; Code Civ. Proc., § 1963, subd. 18.) The arbitrators having found that there had been no fraud and no failure of consideration the inference seems almost inevitable that they also found as a constituent fact that the agreement for a $60,000 house had not been made as claimed by appellants. Certainly that inference must be indulged here.

"Bias, partiality and improper conduct" are charged to the arbitrators. The statute (Code Civ. Proc., § 1288)[2] prescribing grounds for vacating an award is so worded that appellants' assignment must fall within the phrase, "any other misbehaviors, by which the rights of any party have been prejudiced." Appellants' showing made upon their motion to vacate consisted of the affidavits of plaintiffs Lew Lauria and Maybelle Lauria, and their attorney Mr. Alvan M. Palmer. They assert such matters as the following: That Mr. Elliott unduly interrupted and curtailed the testimony of plaintiffs' witnesses while giving free rein to the opposition; that he indulged in a long monologue of his activities as general counsel for Douglas Aircraft; that the decision was made 10 minutes after the conclusion of the hearing; that Mr. Elliott told the other arbitrators what the decision would be and the arbitrators did not confer together; that arbitrator Spencer "was not at all interested in Mr. Gray's testimony. Mr. Spencer's attitude was cynical, careless and inattentive"; also that "Mr. Spencer had no idea what the witness was talking about"; "[w]hen Soriano testified he was listened to with great attention and told all about his plans and produced his crayon 'Come On' sketches." On the contrary an affidavit of defendant's attorney, Mr. Brady, says: "I positively affirm

[2]Code Civ. Proc., § 1288: "In either of the following cases the superior court of the county or city and county in which said arbitration was had must make an order vacating the award, upon the application of any party to the arbitration:

"(a) Where the award was procured by corruption, fraud or undue means.

"(b) Where there was corruption in the arbitrators, or either of them.

"(c) Where the arbitrators were guilty of misconduct, in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence, pertinent and material to the controversy; or of any other misbehaviors, by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final and definite award, upon the subject matter submitted, was not made.

"Where an award is vacated and the time, within which the agreement required the award to be made, has not expired, the court may, in its discretion, direct a rehearing by the arbitrators."

that Mr. Palmer was given tremendous leeway by the Chairman in the presentation of his case. A good deal of hearsay was admitted and the conclusions of witnesses were testified to without proper foundation as to qualification or expertness. The plaintiff was given ample opportunity to present his case in full''; ''[n]either subcontractor was cut off in his testimony although it is highly questionable that the testimony of either was material or held to prove any of the issues of the hearing.'' Clearly these incidents of a contested hearing do not fall within the statutory concept of misconduct.

Pertinent are the following excerpts from *Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.*, 29 Cal.2d 228, 240-241 [174 P.2d 441]: ''In order that the claimed departure from the usual procedure be held to amount to misconduct of the arbitrators sufficient to vacate the award it must be shown that such departure had prejudiced the rights of the buyer. (Code Civ. Proc., § 1288, subd. (c).)

''. . . The purpose of the law in recognizing arbitration agreements and in providing statutory means of enforcement is to encourage persons to avoid delays by obtaining adjustment of their differences by an agency of their own choosing. This was pointed out in *Utah Construction Co.* v. *Western Pacific Ry. Co.*, 174 Cal. 156, 159 [162 P. 631], where it was also said: 'The statutory provisions for a review thereof are manifestly for the sole purpose of preventing the misuse of the proceeding, where corruption, fraud, misconduct, gross error, or mistake has been carried into the award to the substantial prejudice of a party to the proceeding. . . . Therefore every reasonable intendment will be indulged to give effect to such proceedings.'

''. . . Furthermore, arbitrators are not bound by strict adherence to legal procedure and to the rules on the admission of evidence expected in judicial trials. (*In re Connor*, 128 Cal. 279 [60 P. 862].) Such a requirement would tend to defeat the object of the arbitration proceeding.''

*Manson* v. *Wilcox*, 140 Cal. 206, 209 [73 P. 1004]: ''And, in analogy to similar applications for relief in other proceedings, it must be shown that the misconduct or error would or did prejudice the party complaining. This may be made to appear either from the nature of the misconduct or error or from other explanatory facts. Mere conclusions are not sufficient; the facts must be stated. Therefore the statement that the arbitrator 'acted improperly, in a manner by which the

rights' of the parties complaining 'were prejudiced,' means nothing of itself, unless it is followed by particulars.''

Finally appellants attempt to impeach the award through proof of a conversation between appellant Lew Lauria and arbitrator Brander, the conversation being held the evening after the decision and containing such passages as these: ''Lauria: If Mrs. Lauria hadn't restrained me, I was so mad over that raw decision that I was going to ask all three of you if you had any self-respect left. Brander: I don't blame you, but I had nothing to say about it. Lauria: The decision was unanimous, wasn't it? That includes you. Brander: I had nothing to do with the decision. The guy running the show made the decision and gave it to us. Lauria: You mean Elliott? Brander: Wasn't he the old white-haired gentleman in the middle . . . to my left? Lauria: Yes. You mean to say he made the decision alone? . . . and you both agreed with him? Brander: It was getting close to five o'clock and everyone seemed in a hurry. Lauria: Without any delivera- tion and in less than fifteen minutes after hearing five hours of testimony the three of you just casually toss almost six thousand dollars of my money away? Was this a fair trial? Brander: You got a pretty rough deal, alright. Lauria: It was the damnedest travesty on American Justice I've ever witnessed . . . worse than the lowest form of kangaroo court. Brander: It was pretty raw, but I'm afraid Mr. Lauria, I've said too much already. . . . Lauria: Once those findings are signed and filed with the court, I don't have the chance of a snowball in hell. Brander: I wish I could help. I'm not going to let them know I talked to you Mr. Lauria, but I am going to call this Mr. Elliott and ask him what his findings are before he sends them for my signature. . . . Lauria: Your decision implies that we are a couple of liars and guilty of perjury. Brander: Not my decision. Lauria: No, not yours, but nevertheless, its the decision. Brander: I'm terribly sorry, Mr. Lauria, and I wish there was something I could do to help. I can't let anyone know I've talked to you and I hope you won't.''

It is settled law that ''an arbitrator cannot impeach the award by testifying to his fraud or misconduct'' (*Sapp v. Barenfeld,* 34 Cal.2d 515, 523 [212 P.2d 233]), although ''a dissenting arbitrator, the award not being his . . . may testify as to bias, partiality or other misconduct of the arbi- trators who render the award. . . .'' (*Griffith Co.* v. *San Diego College for Women,* 45 Cal.2d 501, 505 [289 P.2d 476,

47 A.L.R.2d 1349].) ▮▮▮ No affidavit or other testimony of Mr. Brander was produced in the present instance. He was not a dissenting arbitrator. The conversation between him and Lew Lauria was on the night of the ruling, November 25, 1958, and the formal award was signed on December 17, 1958, and Mr. Brander joined in it. The trial court was amply justified in concluding that misconduct of the arbitrators had not been shown.

Order affirmed.

Fox, P. J., and Richards, J. pro tem.,* concurred.

*Assigned by Chairman of Judicial Council.