[Civ. No. 21662.    First Dist., Div. Two.    Aug. 18, 1964.]

SANDRA FRANTZ, a Minor, etc., Plaintiff and Appellant, v. INTER-INSURANCE EXCHANGE OF THE AUTO-MOBILE CLUB OF SOUTHERN CALIFORNIA, Defendant and Respondent.

Kessler, Kessler & Greenberg and Jack B. Burstein for Plaintiff and Appellant.

Mullally & McCorkindale and John McCorkindale for Defendant and Respondent.

SHOEMAKER, P. J.—This is an appeal from a judgment entered upon an arbitrator's award. The question presented is whether said award ought to have been vacated by reason of the arbitrator's having improperly admitted a certain sworn statement into evidence.

On August 6, 1961, Sandra Frantz, a child two years of age, was struck and injured by an automobile driven by John Salsbury, an uninsured motorist. On the date of the accident, Sandra's parents were the named insured under a policy of automobile liability insurance issued by the Inter-Insurance Exchange of the Automobile Club of Southern California (henceforth referred to as "the insurer"). Said policy contained an uninsured motorist clause and extended coverage to Sandra Frantz as the minor child of the insured. The policy provided that either the insured or the insurer could demand arbitration, subject to the rules of the American Arbitration Association, in the event they were unable to agree that the insured was legally entitled to recover damages from the owner or operator of an uninsured automobile be-

cause of bodily injury to said insured. On April 24, 1962, a demand for arbitration was duly made on behalf of Sandra Frantz upon the insurer.

On August 22, 1962, a hearing was held before an arbitrator appointed by the American Arbitration Association, and the following evidence was presented: shortly before 6 p. m. on Sunday, August 6, 1961, John Salsbury was driving east on 51st Street in Oakland, California. When Salsbury was some 68 feet west of the Webster Street intersection, the right front portion of his automobile struck Sandra Frantz, who had apparently just emerged from between two automobiles parked on the south side of 51st Street. The testimony was sharply conflicting as to the distance between the two parked vehicles. Two Oakland policemen who investigated the accident were in agreement that the two parked automobiles were separated by a driveway some 16 feet in width. However, one officer testified that the total distance between the two cars amounted to some 30 or 32 feet, since one vehicle was parked 8 to 10 feet west of the driveway, and the other was parked 6 feet east of the driveway. The other officer testified that the two vehicles were separated by only 18 or 19 feet, since the westernmost vehicle was parked immediately adjacent to the driveway, and the other vehicle was no more than 2 or 3 feet east of the driveway. Sandra's father testified that he had conducted a test whereby he drove east on 51st Street when the cars were parked as they were on the date of the accident, and that he had had an unobstructed view of the driveway, sidewalk and yard areas located between the two parked cars when he was still 60 feet west of the point of impact.

John Salsbury testified that he might have had as many as six or seven highballs during the afternoon preceding the accident, and that it was not at all unusual for him to drive after drinking; that he was familiar with 51st Street and had seen children playing there in the past, that his speed was approximately 18 to 20 miles per hour just prior to the accident. Mrs. Salsbury, who was a passenger in the car, stated that it was not possible to see Sandra between the two parked cars and that she was unaware that the child had been struck by the car until she heard a thump. Salsbury similarly testified that he could not see the child between the two parked cars. He stated that he had just glanced back to observe a man washing his car when he saw a flash to his right, and hit

his brakes. When he stopped his car and got out, he saw that he had struck a small child.

The officers testified that they had talked with Salsbury shortly after the accident, that they could smell liquor on his breath, and that they were aware that Salsbury had been drinking. One stated that he had given Salsbury a sobriety test and was convinced that he was not drunk; the other gave his opinion that it had not impaired Salsbury's driving ability.

In addition to the testimony above summarized, the insurer was permitted, over the objections of the insured, to offer into evidence the sworn statement of one William L. Rush. This document bore the title ''deposition'' and consisted entirely of questions posed by an insurance adjuster and answers by the witness Rush. Counsel for the insured asserted that the document was in fact a deposition and objected to its admission into evidence on the ground that it had been taken in Guam and that the insured had been given only three days' notice and was accordingly unable to have a representative present. He also objected to the fact that the insured had never been furnished with a copy of the ''deposition'' and that it had been taken by an insurance adjuster rather than an attorney, and contained many leading questions. Counsel for the insurer made no attempt to deny that the statement had been taken in the manner alleged, but stated only that he had been led to believe that there was no procedure or ''legal machinery'' governing the taking of depositions for use in arbitration proceedings, and that ''you just have to go out on your own and do whatever you want'' and ''the Arbitrator could decide what he could admit and what he couldn't, what weight he would give to it. . . .'' He also stated that he considered the document more in the nature of a statement than a deposition. Counsel for the insured then conceded that affidavits were admissible under the rules of the American Arbitration Association, but asserted that the term ''affidavit'' referred only to a voluntary statement by a witness and not to a recorded interview in question and answer form. The arbitrator ruled in favor of the admissibility of the Rush statement, declaring it to be his opinion that the form of an affidavit went to its weight rather than its admissibility, and that he would give due consideration to the fact that the Rush affidavit was taken ''with some assistance'' and was not the voluntary self-composed statement of the witness.

The affidavit was highly favorable to the insurer. Although none of the witnesses at the hearing had actually observed

Sandra Frantz' activities immediately prior to the accident, the affiant, William Rush, stated that Sandra "came running out of the yard and ran into the street between two cars," that "she ran out between the cars so fast that it was just there." He stated that Salsbury was traveling on the proper side of the road at a moderate speed, and that the two parked cars were separated only by a driveway, which he estimated as being no more than 3 or 4 feet in width. He also stated that Salsbury behaved in a normal manner after the accident, and did not appear to be intoxicated.

Upon this evidence, the arbitrator made an "award" denying Sandra Frantz' claim in its entirety.

Sandra then petitioned the superior court, through her guardian *ad litem,* for an order vacating the arbitrator's award on the ground that the arbitrator had improperly admitted into evidence a "deposition" which had not been taken in accordance with the applicable sections of the Code of Civil Procedure, and which was highly prejudicial to her claim. The insurer filed a response and a petition praying that the arbitrator's award be confirmed and reduced to judgment. After hearing, the court made its order denying the petition to vacate the arbitrator's award and granting the petition to confirm the award. Judgment was entered that Sandra Frantz take nothing from the insurer and that the insurer have judgment against her.

We approach this case with these elemental rules as to arbitration proceedings in mind, and certain pertinent code sections.

■ Every reasonable intendment must be indulged in favor of an arbitration award. (*Lauria* v. *Soriano* (1960) 180 Cal.App.2d 163, 168 [4 Cal.Rptr. 328]; *Drake* v. *Stein* (1953) 116 Cal.App.2d 779, 785 [254 P.2d 613]; *Popcorn Equipment Co.* v. *Page* (1949) 92 Cal.App.2d 448, 451 [207 P.2d 647].)

■■ It has been held that an arbitrator need not give findings or reasons for his award and that the court may not review the merits of the parties' dispute nor the sufficiency of the evidence to support the award. (*Case* v. *Alperson* (1960) 181 Cal.App.2d 757, 761 [5 Cal.Rptr. 635]; *Crofoot* v. *Blair Holdings Corp.* (1953) 119 Cal.App.2d 156, 185-186 [260 P.2d 156].) ■ Moreover, arbitrators are not bound by strict adherence to legal procedure and to the rules on the admission of evidence applicable in judicial trials. (*Forrest* v. *Hotel Conquistador, Inc.* (1961) 193 Cal.App.2d 503, 509-510 [14 Cal.Rptr. 349]; *Lauria* v. *Soriano, supra,* at p. 170.)

274

■ A party seeking to set aside an arbitration award on account of error has the burden to affirmatively establish the existence of such error and the fact that it was prejudicial. (*Popcorn Equipment Co.* v. *Page, supra,* at p. 451; *Ulene* v. *Murray Millman of Cal., Inc.* (1959) 175 Cal.App.2d 655, 660 [346 P.2d 494].) ■ The existence of prejudice may be made to appear from the nature of the error itself or from other explanatory facts. (*Lauria* v. *Soriano, supra,* at pp. 170-171; *Manson* v. *Wilcox* (1903) 140 Cal. 206, 209-210 [73 P. 1004].)

Title IX of the Code of Civil Procedure (§§ 1280-1294.2) contains the various legislative provisions governing the enforcement of arbitration agreements and awards and the conduct of arbitration proceedings. Code of Civil Proecdure, section 1283, entitled "Depositions," provides as follows: "On application of a party to the arbitration the neutral arbitrator may order the deposition of a witness to be taken for use as evidence and not for discovery if the witness cannot be compelled to attend the hearing or if such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally at the hearing, to allow the deposition to be taken. The deposition shall be taken in the manner prescribed by law for the taking of depositions in civil actions. If the neutral arbitrator orders the taking of the deposition of a witness who resides outside the State, the party who applied for the taking of the deposition shall obtain a commission therefor from the superior court in accordance with sections 2024 to 2028, inclusive, of this code."

Code of Civil Procedure, section 2024, provides in relevant part that a party desiring to take a deposition upon oral examination outside the state shall proceed in the manner provided for in Code of Civil Procedure, section 2019. Pursuant to subdivision (a)(1) of section 2019, every other party to the action must be given written notice of at least 10 days, adding one day for every 300 miles of distance of the place of examination from the residence of the person to whom the notice is given. Subdivision (c) of the section provides that a party with notice of the taking of a deposition may elect either to participate in the oral examination or to transmit written interrogatories to be propounded by the officer before whom the deposition is to be taken. Subdivision (c) further provides that at the time of the oral examination, objections may be made to the qualifications of the officer taking the

deposition, the manner in which it is taken, the evidence presented, the conduct of any party, or any other error in the proceedings.

Code of Civil Procedure, section 1286.2, provides in relevant part that when a party files a petition or response requesting that an arbitration award be vacated or corrected, the court shall vacate the award if it determines that "(c) The rights of such party were substantially prejudiced by misconduct of a neutral arbitrator; (d) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted; or (e) The rights of such party were substantially prejudiced by the refusal of the arbitrators to postpone the hearing upon sufficient cause being shown therefor or by the refusal of the arbitrators to hear evidence material to the controversy or by other conduct of the arbitrators contrary to the provisions of this title."

In the instant case, appellant contends that the arbitrator was guilty of misconduct within the meaning of subdivision (e) and exceeded his powers within the meaning of subdivision (d) when he admitted the Rush "deposition" into evidence. Although appellant places no reliance upon subdivision (e), it would appear that an erroneous ruling on the admissibility of evidence should more properly be categorized as "other conduct of the arbitrators contrary to the provisions of this title" within the meaning of subdivision (e). Be that as it may, however, appellant contends that the Rush "deposition" was clearly inadmissible because respondent made no attempt to take it in the manner required by Code of Civil Procedure, section 1283. Appellant asserts, more specifically, that respondent never applied to the arbitrator for permission to take the deposition for use as evidence, never applied to the superior court for a commission to take the deposition outside the state, never provided appellant with the requisite notice, and by virtue of these several omissions effectively deprived appellant of the opportunity to attend the taking of the deposition and avail herself of her rights to cross-examine the witness and to object to various errors in the proceedings, such as the use of leading and suggestive questions and the fact that the interrogation was conducted by an insurance adjuster rather than an attorney. Appellant reasons that a "deposition" taken in such blatant disregard of the requirements set forth in Code of Civil Procedure, section 1283, must of necessity be deemed of no evidentiary value whatever and

that the arbitrator accordingly exceeded his powers and was guilty of misconduct when he admitted it into evidence. Appellant further asserts that the evidence exclusive of the deposition was so closely balanced on the issue of Salsbury's negligence as to leave no doubt but that said error was prejudicial to appellant.

Respondent, apparently conceding that the deposition was not taken in the manner required by Code of Civil Procedure, section 1283, asserts that this fact in no way limited the arbitrator's power to accept it as evidence. Respondent relies upon certain language in Code of Civil Procedure, section 1282.2, subdivision (d), that ''Unless the arbitration agreement otherwise provides . . . [t]he parties to the arbitration are entitled to be heard, to present evidence and to cross-examine witnesses appearing at the hearing, *but rules of evidence and rules of judicial procedure need not be observed. . . .*'' (Italics added.) Respondent also relies upon sections 24 and 25 of the Accident Claims Tribunal Rules of the American Arbitration Association, pursuant to which the instant arbitration proceedings were conducted. Rule 24 provides in relevant part that ''The Arbitrator shall be the judge of the relevancy and materiality of the evidence offered and conformity to legal rules of evidence shall not be necessary.'' Rule 25 provides that ''The Arbitrator may receive and consider the evidence of witnesses by Affidavit, but may give it only such weight as he deems it entitled to after consideration of any objections made to its admission.'' Respondent contends that since the arbitrator was not bound by legal rules of evidence and was specifically authorized, under rule 25, to admit affidavits into evidence, it was unnecessary for the parties to comply with the deposition requirements set forth in Code of Civil Procedure, section 1283, and the Rush statement was properly received into evidence as an affidavit. Respondent's position is sound.

Code of Civil Procedure, section 2003, defines an affidavit as ''a written declaration under oath, made without notice to the adverse party.'' Code of Civil Procedure, section 2004, defines a deposition as ''a written declaration, under oath, made upon notice to the adverse party, for the purpose of enabling him to attend and cross-examine.'' ▮ Since the crucial distinction lies in the giving of notice in order to allow cross-examination, it is apparent that the Rush statement falls squarely within the definition of an affidavit and that the mere fact that it was taken in question and answer form and

labeled a "deposition" is of little or no moment. ■ It is equally apparent that the deposition requirements enumerated in Code of Civil Procedure, section 1283, were intended to apply only in those instances where the arbitration agreement of the parties and the procedural rules with which they had agreed to abide did not authorize the use of affidavits, rather than depositions, as evidence. ■ The arbitrator's decision to admit the Rush statement into evidence and to accord it whatever weight was merited by the circumstances of its taking was in strict compliance with rule 25 and did not constitute a ground for vacating the award under Code of Civil Procedure, sections 1286.2, subdivisions (c), (d), or (e).

■ Appellant asserts for the first time in her reply brief that the Rush statement, even if viewed as an affidavit, was insufficient because not taken before any of the officials enumerated in Code of Civil Procedure, section 2014. Appellant did not raise this ground of objection, in the arbitration proceedings. Moreover, appellant has failed to demonstrate that the arbitration rules with which the parties had agreed to comply contained any requirement that an affidavit for use as evidence be taken in accordance with Code of Civil Procedure, section 2014. Under such circumstances, the arbitrator, who was not bound by legal rules of evidence, would have been entitled to admit the affidavit into evidence even if appellant had called the alleged deficiency to his attention.

Judgment affirmed.

Agee, J., and Taylor, J., concurred.