[No. D002747. Fourth Dist., Div. One. May 14, 1985.]

ARCO ALASKA, INC., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, etc., Respondent;
AMERADA HESS CORPORATION et al., Real Parties in Interest.

[No. D002750. Fourth Dist., Div. One. May 14, 1985.]

EXXON CORPORATION, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, etc., Respondent;
AMERADA HESS CORPORATION et al., Real Parties in Interest.

## COUNSEL

Hughes, Hubbard & Reed, John A. Donovan, Bridgette A. Berry, Ronald J. Tabak, Thomas T. Tamlyn, Jr., William J. Bonner, Skadden, Arps, Slate, Meagher & Flom, John C. Held, Baker & Botts, Jack D. Fudge, Howard J. Privett, McCutchen, Black, Verleger & Shea for Petitioner.

No appearance for Respondent.

Higgs, Fletcher & Mack, Dan E. Hedin, Patrick D. Webb, Bracewell & Patterson, William Key Wilde, Marc D. Murr, Timothy T. West, John S. Carr, Edward M. Rubenstein, Robert M. Peckham, Jr., Charles Sutter and Mark Reinke for Real Parties in Interest.

## OPINION

BUTLER, J.—Sohio Alaska Petroleum Company (Sohio), a party to an arbitration, moved to vacate and set aside an arbitration award on the ground the arbitrators exceeded their powers, and sought an order allowing depositions to be taken of the dissenting arbitrators and the alternate and

production of documents touching upon the arbitrators' deliberations. The court granted the discovery, stayed its order and these petitions ensued.

We shall hold the depositions of the dissenting and alternate arbitrators may not be taken and the documents need not be produced as the sought-for discovery goes to the merits of the controversy adjudicated by the arbitration, and grant the writs.

## I

The Prudhoe Bay Unit Operating Agreement (PBUOA) provides for the joint development and operation of an oil and gas field located at Prudhoe Bay on the north slope of Alaska. Parties to PBUOA for purposes of these proceedings are the petitioners Exxon Corporation and Arco Alaska, Inc. (respectively Exxon and Arco) and corporate real parties in interest[1] Amerada Hess Corporation, B.P. Alaska Exploration Inc., Chevron U.S.A. Inc., Getty Oil Company, The Lousiana Land and Exploration Company, Marathon Oil Company, Mobil Oil Corporation, Petro-Lewis Corporation, Phillips Petroleum Company, Shell Western E&P Inc., Shell Oil Company, and Sohio Alaska Petroleum Company (real parties).[2] Petitioners and real parties are working interest owners of mineral leases and leasehold interests in the field.

Natural gas is used as fuel to operate the field. PBUOA article 30.008, the fuel gas supply option (FGSO), provides if substantial sales of Prudhoe Bay gas (Major Gas Sale) have not commenced after seven years of oil production, the various working interest owners have the option to require the large quantities of natural gas used as fuel to operate the field be supplied by the owners in proportion to their respective ownership interest in the field's gas reserves. Arco and Exxon exercised that option.

The FGSO provides that gas supplied upon exercise of the option shall be accounted for at an "initial, tentative value" until a major gas sale occurs. The parties could not agree upon an initial, tentative value. PBUOA article 30.008.04 provides for arbitration to resolve such a dispute. Exxon and Arco initiated arbitration proceedings.

Real parties other than Shell Oil Company and Shell Western E&P Inc. sued Arco and Exxon in Texas[3] seeking interpretation of "the initial, ten-

---

[1]Both Exxon and Arco name the other as real parties in interest in their petitions. As their interests in these proceedings coincide, we do not name either as a real party in interest.

[2]These real parties have answered the petitions and joined in Sohio's opposition to the petitions, except Petro-Lewis Corporation, Shell Western E&P Inc. and Shell Oil Company. We nevertheless include them in our references to Sohio.

[3]Sohio Alaska Petroleum Company, et al. v. Exxon Corporation and Arco Alaska, Inc., District Court of Harris County, Texas, cause No. 83-70098.

tative value" phrase. All of the parties agreed the ruling of the Texas court would be binding on them and the arbitration board. The Texas court issued its findings of fact, conclusions of law and judgment interpreting the phrase.

Arbitration then proceeded to a decision dated November 18, 1984: "The initial, tentative value of the fuel gas to be supplied under Article 30 of the Prudhoe Bay Unit Operating Agreement is $3.04/MMBTU."

Three arbitrators supported the decision and opinion of the arbitration board; two did not support the decision and expressed their dissents in writing.

PBUOA article 38 (the arbitration agreement) provides for arbitration of disputes. The award of the arbitration board is final. Judgment on the award may be entered in any court with jurisdiction. Exxon and Arco filed petitions with the court to confirm the award. Sohio filed a petition to correct and/or vacate the award.

Sohio then noticed the taking of depositions of the dissenting arbitrators and the alternate arbitrator and sought an order issuing a commission to take the depositions out of state. Sohio also requested the arbitration board furnish all documents relating to the arbitration deliberations.

Exxon and Arco asked for protective orders prohibiting the taking of the depositions and the furnishing of the documents. The court denied the protective orders, issued the commission for the taking of the depositions, directed the board to produce the documents and stayed further proceedings pending our disposition of these petitions for writs of mandate.

## II

In the trial court and here, Sohio states the only issue sought to be explored through the taking of the depositions and the furnishing of arbitration materials is whether the arbitrators acted in excess of their powers. Sohio abandons earlier contentions including the award was produced by bias, prejudice or undue means. We first inquire into the allegation the arbitrators acted in excess of their powers.

## A.

PBUOA article 30.008.04 calls for determination of the value of natural gas supplied as fuel to the working interest owners: "The value of such fuel gas, which shall be finally established after Major Gas Sale, shall be determined as follows: For purposes of accounting under this Section until Major

Gas Sale, the initial, tentative value shall be the fair market value of the gas, based on then current sales in the vicinity, if any, and on the value basis at which royalty settlements are then being made with the State of Alaska for gas produced in the vicinity. Such fair market value shall be the value approved not later than nine months before the End of Seventh Year by the Working Interest Owner who would supply fuel gas on the one hand and by the Working Interest Owners of the Participating Area who would take the fuel gas on the other. If the fair market value is not approved by that time, it shall be determined by arbitration according to Article 38." As fair market value was not so approved, Arco and Exxon sought arbitration. As we have seen, the Texas court's interpretation of that paragraph was to be binding on the parties and the arbitrators.

The arbitration board on May 7, 1984, noticed[4] all the working interest owners their petitions, responses and proposed statements of issues had been considered and stated the issue to be resolved in the arbitration: "ISSUE: What is 'the initial, tentative . . . fair market value of the gas, based on then current sales in the vicinity . . . and on the value basis at which royalty settlements are then being made with the State of Alaska for gas produced in the vicinity'?" The notice of statement of issue advised the working interest owners the arbitration board would be guided by the Texas court's judgment and findings of fact and conclusions of law interpreting PBUOA article 30.008.04.

B.

The board's final decision stated "The initial, tentative value of the fuel gas to be supplied under Article 30 of the Prudhoe Bay Unit Operating Agreement is $3.04/MMBTU." The opinion recited: "The Board has considered all of the testimony, exhibits, briefs, petitions for reconsideration, other papers filed for the Board's consideration, and arguments of counsel presented in this arbitration and the Texas Court's Judgment and Findings of Fact and Conclusions of Law interpreting and construing the language of Section 30.008.04 of the Agreement, and after careful deliberation has determined, in conformity therewith, that as of September 19, 1984, the 'date of Arbitration,' the initial tentative fair market value of the gas, based on then current sales in the vicinity and on the value basis at which royalty settlements were then being made with the State of Alaska for gas produced

---

[4] This statement-of-issue notice is required under PBUOA article 38.302 which calls for a preliminary hearing to identify the specific issues of fact and controversy to be decided by the board. Each working interest owner files a prehearing statement summarizing proposed testimony and evidence and identifying witnesses. The board then prepares and sends to the owners a statement of the issues with disputed technical and factual data. Any owner may move for reconsideration, a final hearing is held and the final statement is then promulgated.

in the vicinity is $3.04/MMBTU. As there is no provision for escalation of the initial, tentative value in the Operating Agreement, this value shall remain in effect, without escalation, until Major Gas Sale as that term is defined in the Prudhoe Bay Unit Operating Agreement. [Fn. omitted.]"

Dissenting arbitrators John M. McCollam and Robert B. Stobaugh, whose depositions are sought by Sohio, did not support the decision and opinion as first promulgated October 20, 1984. McCollam did not support it because "the initial tentative fair market value of the subject fuel gas, as determined by the majority of the Board, substantially exceeds a 'fair price for the gas' within the intended purview of the Judgment and Findings of Fact and Conclusions of Law of the Texas Court." Neither McCollam nor Stobaugh supported the decision and opinion issued November 18, 1984 after board reconsideration. This time, Stobaugh stated agreement with McCollam's October 20, 1984 dissenting opinion and elaborated his own views to which McCollam subscribed in addition to his earlier statement.

Stobaugh noted the decision will result in the transfer of billions of dollars from working interest owners with substantial oil interests (Oil Rim Working Interest Owners) to those owning substantial interests in natural gas production (Gas Cap Working Interest Owners). He complains "it is still possible to conclude from the size of the award" the decision did not give adequate weight to changed market conditions, and production-related costs substantially in excess of those incurred by Gas Cap Working Interest Owners are included in the price bases upon which the award was made. Stobaugh concedes while "it is reasonable to argue the extent to which market conditions have changed" it is unreasonable to conclude "it is unfair for a party to argue that market conditions have changed substantially." He characterizes the decision as having the effect of a penalty on the Oil Rim Working Interest Owners, the award is higher than any party anticipated and the evidence is overwhelming market conditions substantially lowered the value of the natural gas.[5] In short, Stobaugh and McCollam strongly disagree with the decision and the rationale of the opinion, objecting to conclusions as to market conditions used in the arbitration to compute the initial tentative fair market value of the gas and the use of excessive production-related costs in the price bases.

---

[5] The Texas court judgment mandated the initial, tentative fair market value of the gas would be determined by giving a lesser weight, or no weight at all to any sale which does not contribute to ascertaining a fair price for the gas or to any sale the substantial purpose of which was to influence unfairly the valuation of the gas. Lesser weight, or no weight at all, was likewise to be given to sales where market conditions have so changed that such sales would not contribute to or have a diminished effect in ascertaining a fair price for the gas; so too with royalty payments to the State of Alaska if market conditions had so changed. The Texas judgment thus anticipated and required market condition analysis in determination of value.

We conclude the decision and opinion of the board as supported by three of the arbitrators is within the scope of the arbitrated issue as framed by the board. The written statements of the two arbitrators who did not support the decision or opinion do not suggest the arbitrators exceeded their authority. The dissents in effect aver the decision establishing the initial tentative fair market value of the gas simply exceeds a "fair price for the gas" within the purview of the Texas court judgment. We consider whether that averment constitutes an allegation the arbitrators acted in excess of their powers, i.e., went beyond the issue as framed for the arbitration.

## III

The arbitration agreement provides the final decision of the board[6] shall not be subject to vacation through judicial proceedings except for stated reasons including the one on which Sohio solely relies: "38.316 . . . (4) The arbitrators exceeded their powers and the award cannot be corrected without affecting the merits of the decision upon the controversy submitted . . . ." That provision exactly tracks subdivision (d) of Code of Civil Procedure section 1286.2, grounds for vacation of award.

 While it is true persons cannot be compelled to accept arbitration of controversies not required by statute and to which they have not agreed (*Freeman* v. *State Farm Mut. Auto Ins. Co.* (1975) 14 Cal.3d 473, 481 [121 Cal.Rptr. 477, 535 P.2d 341]) and an arbitration award deciding unsubmitted issues is required to be set aside (*Delta Lines, Inc.* v. *International Brotherhood of Teamsters* (1977) 66 Cal.App.3d 960, 966 [136 Cal.Rptr. 345]), these events are not in our case. The parties agreed to binding arbitration subject to vacation upon stated events. They agreed to an elaborate procedure to frame the issue to be arbitrated.

The board, after preliminary hearing, precisely and narrowly defined the issue to be arbitrated, i.e., the initial, tentative value of the gas, based on then current sales in the vicinity and on the value basis of royalty settlements to Alaska. The decision fixed the initial, tentative value of the gas at $3.04/MMBTU. The opinion recited that value was based on such current sales and such value basis.

The decision and opinion facially are within the scope of the issue framed for arbitration and the award facially is thus within the powers granted to the arbitrators by the parties. Arguably, then, the arbitrators did not exceed their powers. (*Taylor* v. *Crane* (1979) 24 Cal.3d 442 [155 Cal.Rptr. 695,

---

[6]Where, as here, petitions for reconsideration are filed, the second written decision and opinion is the final decision of the board.

595 P.2d 129]; *Morris* v. *Zuckerman* (1968) 69 Cal.2d 686, 690 [72 Cal.Rptr. 880, 446 P.2d 1000].)

## IV

■ Assuming all this to be true, and keeping in mind Sohio's sole contention the arbitrators exceeded their powers, we understand Sohio nevertheless contends entitlement to the taking of the depositions of the dissenters and the alternate because the arbitrators were forbidden to communicate with anybody;[7] had such communication been allowed, Sohio might have discovered the arbitrators exceeded their powers by refusing to follow the Texas court precepts in the interpretation of the manner in which the value of the gas was to be determined; facts so elicited would be includable in affidavits on which the court could base a vacation of the award; absent such communications, Sohio contends the depositions are necessary.

Sohio's inability by reason of the "gag order" to probe informally into the arbitration proceedings or to secure affidavits from the dissenters and the alternate concerning an arbitrator's excess of power does not support the taking of the depositions. An expedition into the mental processes of the arbitrators, a review of the materials they considered, an inquiry into their deliberations, an analysis of their reasoning in reaching their decisions—all are off limits to the hunt whether conducted by affidavit or by deposition where the quarry is ascertainment of an excess of powers in the circumstances here presented.

Stripped of camouflage, Sohio's deposition quest is an attack on the merits of the arbitration award. The opinion and decision clearly fall within the scope of the arbitrated issue. The written dissents make no claim of an excess of power; they simply lament the *ratio decidendi* and the result. Had the majority strayed from the issue, these dissenters without doubt would have remarked on the detour. They did not.

■ While arbitrator declarations may be received where the record does not disclose issues submitted for decision and the materials considered by the arbitrators (*Sapp* v. *Barenfeld* (1949) 34 Cal.2d 515, 523 [212 P.2d 233]) and when a dissenting arbitrator charges improprieties in the arbitra-

---

[7]The arbitration agreement provides for an arbitration administrator who was asked by the board following rendition of its final decision to opine on whether the arbitrators, post-award, could communicate in any manner with the parties to the arbitration. The administrator concluded provisions of the arbitration agreement, the oath taken by the arbitrators and the Canon of Ethics for Arbitrators in Commercial Disputes approved in 1977 by the American Bar Association House of Delegates prohibited any such communication except as might be court-ordered. The parties refer to the resultant direction to the arbitrators as the "gag order."

tion (*Griffith Co.* v. *San Diego Col. for Women* (1955) 45 Cal.2d 501, 505-507 [289 P.2d 476, 47 A.L.R.2d 1349]) and where others charge bias, partiality or improper conduct (*Lauria* v. *Soriano* (1960) 180 Cal.App.2d 163, 169 [4 Cal.Rptr. 328]), the merits of a controversy between the parties are not subject to judicial review. (*Pacific Vegetable Oil Corp.* v. *C.S.T., Ltd.* (1946) 29 Cal.2d 228, 233 [174 P.2d 441]; *Crofoot* v. *Blair Holdings Corp.* (1953) 119 Cal.App.2d 156, 184 [260 P.2d 156]; *Lauria* v. *Soriano, supra,* 180 Cal.App.2d 163 at p. 167.) ■ Arbitrators are not required to explain their awards or provide reasons for their conclusions. (*Sapp* v. *Barenfeld, supra,* 34 Cal.2d 515 at p. 522.)

The depositions are sought by Sohio to elicit facts going to the merits of the controversy. This postaward discovery, if allowed, would authorize a fishing expedition into waters stilled by the decision of the arbitrators. The parties agreed to arbitrate their dispute concerning the initial, tentative value of the gas. The decision of the arbitrators was final subject only to vacation upon the finding of specified events. Sohio made no showing any of the specified events occurred. In the circumstances presented, the gag order did not prevent Sohio from making such a showing. Sohio chose to vacate the award based upon the exercise by the arbitrators of an excess of powers. The record is crystal clear the arbitrators did not exceed their powers. It follows the sought-for depositions seek facts attacking the merits of the decision. This Sohio cannot do. (*Hirsch* v. *Ensign* (1981) 122 Cal.App.3d 521, 530 [176 Cal.Rptr. 17].) The order authorizing issuance of the commissions to take depositions must be reversed.

V

■ One issue remains. The court ordered the arbitrators and the alternate and other persons to produce documents requested by Sohio.

"3.1 The following 'documents' are requested for production: (a) any and all documents that constitute, record, relate, summarize, comment on or refer to deliberations by the Prudhoe Bay Unit Operating Agreement No. 2 arbitration board including, but not limited to those that relate, directly or indirectly, to the following:

"(1) costs incurred beyond the wellhead for gathering, treating, and/or delivering gas for use in field operations;

"(2) NGPA ceiling price limits;

"(3) the Texas Courts' judgment, and findings of fact and conclusions of law;

"(4) whether a party to the arbitration could be heard to argue that market conditions have changed;

"(5) imposing a penalty on any working interest owner(s); and

"(6) State of Alaska royalty settlements and payments alleged to be due for Prudhoe Bay gas."

PBUOA Article 38.321 provides: "The Board shall, upon the written request of a Working Interest Owner, furnish to such Working Interest Owner, at its expense, certified facsimiles of any papers in the Board's possession that may be required in judicial proceedings related to the arbitration." Sohio contends article 38.321 requires the production of the requested documents.

We disagree. The key phrase in article 38.321 is "any papers in the Board's possession *that may be required in judicial proceedings related to the arbitration.*" Sohio's requested documents are those that "constitute, record, relate, summarize, comment on or refer to *deliberations*" by the board. Sohio thus would look into the board's deliberations as evidenced by the requested documents to establish grounds to support its contention the arbitrators exceeded their powers, the sole claimed basis for vacating the award. The request must be denied.

The deliberations of the arbitrators are sacrosanct. Absent an agreement so to do, the parties to an arbitration may not join in the deliberations of the arbitrators as they sit around the arbitration table or through discovery of documents reflecting those deliberations.

PBUOA article 38.321 is not such an agreement. Documents are to be provided for use in judicial proceedings concerning the award. As we have seen, Sohio's sought-for depositions go to the merits of the arbitration controversy and may not be taken. Sohio's discovery of documents goes not only to the merits of the controversy as can be seen from their description, but also to the deliberative processes of the arbitration itself. For both these reasons, the request for documents must be denied.

Petitions for writs of mandate granted. The court is ordered (1) to vacate its order which authorized the issuance of commissions to take depositions

and directed the arbitration board to produce the documents requested by Sohio, and (2) to deny Sohio's motions seeking such order.

Work, Acting P. J., and Lewis, J., concurred.

The petition of real party in interest Sohio Alaska Petroleum Company for review by the Supreme Court was denied July 31, 1985.