BILL LOCKYER Attorney General DANIEL G. STONE Deputy Attorney General
THE HONORABLE PATRICIA WIGGINS, MEMBER OF THE CALIFORNIA STATE ASSEMBLY, has requested an opinion on the following questions:
1. Is an insurer required to report to the California Architects Board a settlement or arbitration award exceeding $5,000 that involves a claim or action for damages alleging that an insured architect has engaged in wrongful conduct?
2. What type of "settlement" of what type of "claim" must an insurer report to the California Architects Board?
3. Is an insurer required to report to the California Architects Board a settlement or arbitration award exceeding $5,000 that is paid on behalf of an architectural firm, where the claim or action for damages alleges that there was wrongful conduct with respect to the architectural services performed?
 CONCLUSIONS
1. An insurer is required to report to the California Architects Board a settlement or arbitration award exceeding $5,000 that involves a claim or action for damages alleging that an insured architect has engaged in wrongful conduct.
2. A "settlement" of a "claim" that an insurer must report to the California Architects Board is any agreement which resolves all or part of a demand for money that is based upon an insured architect's alleged wrongful conduct.
3. An insurer is required to report to the California Architects Board a settlement or arbitration award exceeding $5,000 that is paid on behalf of an architectural firm, where the claim or action for damages alleges that there was wrongful conduct with respect to the architectural services performed.
 ANALYSIS
In 1979, the Legislature amended the Architects Practice Act (Bus. Prof. Code, §§ 5500-5610.7; "Act")[1] to require that a report be filed with the California Architects Board (§ 5502; "Board") whenever a claim that was premised on a licensed architect's[2] alleged "fraud, deceit, negligence, incompetency, or recklessness" resulted in a settlement or arbitration award of more than $5,000. (Stats. 1979, ch. 742, §§ 1-3.) The primary statute requiring our interpretation is section 5588, which states:
 "Every insurer providing professional liability insurance to a holder of a license, and every license holder, shall send a complete report to the board on any settlement or arbitration award in excess of five thousand dollars ($5,000) of a claim or action for damages caused by the license holder's fraud, deceit, negligence, incompetency, or recklessness in practice. The report shall be sent within 30 days after the settlement agreement has been consented to by the insured or within 30 days after service of the arbitration award on the parties."[3]
The three questions presented for resolution concern the language of section 5588: (1) what determination is necessary that the claim or action for damages was "caused by" the architect's "fraud, deceit, negligence, incompetency, or recklessness," (2) what is meant by the "settlement" of a "claim," and (3) is the statute applicable to payments made on behalf of an architectural firm?
1. Alleged Wrongful Conduct
Section 5588 requires the reporting of any settlement or arbitration award exceeding $5,000 of a claim or action for damages "caused by" an architect's fraud, deceit, or other wrongdoing. For the limited purposes of this reporting duty, we are asked to identify what is needed to establish the link between the alleged damages and the architect's wrongful conduct. We may assume for our purposes that the claimant has alleged an architect's wrongful conduct as the basis for the claim or action for damages, but is something more required? Must the claimant's allegation be "confirmed" or "conceded" in some manner by the architect, the insurer, or the arbitrator in order to trigger the reporting requirements of the statute? We conclude that the claimant's allegation of wrongdoing is alone sufficient for purposes of triggering the reporting requirements of section 5588.
In considering whether the statute requires an admission of wrongdoing by the architect or some type of concession by the insurer, we are aware that settlement agreements resolving claims of architects' wrongdoing seldom, if ever, include recitation of the architect's fault or liability; to the contrary, they routinely include a disclaimer to the effect that the settlement payment was made solely to resolve a disputed claim and did not constitute an admission of wrongdoing by the architect or a recognition of damages incurred by the claimant.
As for an arbitrator's determination of fault, we note that an arbitration award may be made without any findings or any indication of the arbitrator's reasoning. (See Sapp v. Barenfeld (1949) 34 Cal.2d 515, 522-523; Baldwin Co. v. Rainey Construction Co. (1991) 229 Cal.App.3d 1053, 1058, fn. 3; Arco Alaska v. Superior Court (1985) 168 Cal.App.3d 139, 148; Cothron v. Interinsurance Exchange (1980) 103 Cal.App.3d 853, 860.)
We do not believe that the reporting requirements of section 5588 may be avoided by an architect's refusal to admit the wrongful conduct, or by the insurer's refusal to concede fault, or by the lack of a finding of fault by an arbitrator. To allow such evasion would eviscerate the statute. Here, the Board is to be informed when the claim or action for damages is based upon "the license holder's fraud, deceit, negligence, incompetency, or recklessness in practice." It is the claimant who alleges the wrongful conduct as the basis for the claim or action. No admission by the architect or insurer is necessary, nor is an arbitrator's determination required.
Such construction of section 5588 serves the Legislature's goal of protecting the public interest. The Board is advised of the settlement or award and then determines, in the exercise of its administrative discretion, whether its investigation of the matter would be appropriate. The Board may thereby protect the public interest, while the architect's interests are not sacrificed. The report itself merely provides information; it does not constitute a finding. Should an investigation ensue, the architect may establish that no wrongful conduct occurred.
In this regard, we note that "fraud, deceit, negligence, incompetency, or recklessness" are grounds for disciplinary action. (See §§ 5583 [fraud or deceit], 5584 [negligence], 5585 [incompetency or recklessness].) The Legislature has described the Board's paramount mission as protecting the public interest. Section 5510.15 states:
 "Protection of the public shall be the highest priority for the California Architects Board in exercising its licensing, regulatory, and disciplinary functions. Whenever the protection of the public is inconsistent with other interests sought to be promoted, the protection of the public shall be paramount."
In furtherance of this legislative objective, the Act provides an administrative complaint process for members of the public who wish to file a complaint with the Board concerning the competency, quality, or integrity of licensed architects. (§§ 5560-5565.) Section 5588 serves as another means by which the Board is provided with relevant information so that appropriate action may be taken to protect the public interest. We must construe section 5588 "`with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.'" (People v. Coronado (1995) 12 Cal.4th 145, 151.)
We conclude that an insurer is required to report to the Board a settlement or arbitration award exceeding $5,000 that involves a claim or action for damages alleging that an insured architect has engaged in wrongful conduct.
2. "Settlement" of a "Claim"
The second question seeks an interpretation of the terms "settlement" and "claim" for purposes of section 5588. We conclude that the "settlement" of a "claim"[4] is any agreement resolving all or part of a demand for money which is based upon an insured architect's alleged wrongful conduct.
A "settlement," in this context, is an agreement. (See Mesler v. Bragg Management Co. (1985) 39 Cal.3d 290, 304 [a settlement "means simply that the parties have agreed to resolve their problems outside the courtroom"]; Mares v. Baughman (2001)92 Cal.App.4th 672, 676 ["a settlement is an agreement between the parties to a dispute regarding how that dispute will be resolved"].) "Settlement" carries no express or implied requirement of findings or admissions. Rather, it commonly refers only to a "satisfaction of a claim by agreement" (Webster's 3d New Internat. Dict. (2002) p. 2079) or "[a]n agreement ending a dispute or lawsuit" (Black's Law Dict. (7th ed. 1999) p. 1377).[5]
As for "claim," it is ordinarily defined as "a demand for compensation, benefits, or payment" (Webster's 3d New Internat. Dict., supra, at p. 414) or "[a] demand for money or property to which one asserts a right" (Black's Law Dict., supra, at p. 240). (See Safeco Surplus Lines Co. v. Employer's Reinsurance Corp. (1992) 11 Cal.App.4th 1403, 1407 [a "claim" is "`the assertion, demand or challenge of something as a right; the assertion of a liability to the party making it to do some service or pay a sum of money'"]; Fireman's Fund Ins. Co. v. Superior Court (1997)65 Cal.App.4th 1205, 1216 [claim "may be a demand for payment communicated in a letter"].) In Abifadel v. Cigna Ins. Co. (1992)8 Cal.App.4th 145, 160, the court considered whether an insurance policy "claim" had been sufficiently articulated:
 "In defining `claims,' the law focuses on the claimant's formal demands for service or payment and does not recognize a request for an explanation, the expression of dissatisfaction or disappointment, mere complaining, or the lodging of a grievance as a claim. In both its ordinary meaning and in the interpretation given to it by other courts in similar circumstances, a claim is a demand for something as a right or as due. A formal lawsuit is not required before a claim is found to have been made. [Citations.] A claim is the assertion of a liability of the party, demanding that the party perform some service or pay some money. [Citation.] A claim is a demand or challenge of something as a right and asserts the liability of the party from whom a service or sum of money is requested. [Citation.]"
The only qualifications placed on the term "claim" for purposes of section 5588 are that (1) the demand be premised on the license holder's alleged "fraud, deceit, negligence, incompetency, or recklessness in practice," and (2) the value of the claim, as measured by the settlement amount or arbitration award, exceeds $5,000. Like "settlement," a "claim" requires no admissions or findings; it is not limited by form or format.
While a claim must be "for damages," the requirement of "damages" is met by the settlement or arbitration award that must be in excess of $5,000. In this context, "damages" means compensation in money. (Civ. Code, § 3281.) We note that a claim may initially be for a service rather than for the payment of money. For example, a building owner may demand that an architect cure the alleged "fraud, deceit, negligence, incompetency, or recklessness in practice" by performing the contract as agreed. The settlement or arbitration award in excess of $5,000 with respect to such an initial claim for a service would result in the claim being one "for damages" within the meaning of section 5588.[6]
We conclude that a "settlement" of a "claim" that an insurer must report to the Board is any agreement which resolves all or part of a demand for money that is based upon an insured architect's alleged wrongful conduct.
3. Payment on Behalf of an Architectural Firm
Finally, we are asked whether section 5588's reporting requirements apply when an insurer pays a settlement amount or arbitration award on behalf of an architectural firm rather than on behalf of one of the firm's individual license holders. We conclude that an insurer is required to file a report with the Board in these circumstances, where the claim or action for damages alleges that there was fraud, deceit, or other statutorily specified wrongful conduct with respect to the architectural services performed.
While a corporation is not precluded "from furnishing or supplying by contract architectural services," it must do so "by and under the responsible control of a licensed architect or architects." (§ 5535.3.) Section 5536.1 provides:
 "(a) All persons preparing or being in responsible control of plans, specifications, and instruments of service for others shall sign those plans, specifications, and instruments of service and all contracts therefor, and if licensed under this chapter shall affix a stamp, which complies with subdivision (b), to those plans, specifications, and instruments of service, as evidence of the person's responsibility for those documents. Failure of any person to comply with this subdivision is a misdemeanor punishable as provided in Section 5536. This section shall not apply to employees of persons licensed under this chapter while acting within the course of their employment.
 "(b) For the purposes of this chapter, any stamp used by any architect licensed under this chapter shall be of a design authorized by the board which shall at a minimum bear the licensee's name, his or her license number, the legend `licensed architect' and the legend `State of California,' and which shall provide a means of indicating the renewal date of the license.
 "(c) The preparation of plans, specifications, or instruments of service for any building, except the buildings described in Section 5537, by any person who is not licensed to practice architecture in this state, is a misdemeanor punishable as provided in Section 5536.
 "(d) The board may adopt regulations necessary for the implementation of this section."
"Responsible control" is defined in section 5535.1 as "that amount of control over the content of technical submissions during their preparation that is ordinarily exercised by architects applying the required professional standard of care." (See §§ 5535.2 [architect may form partnership with non-architect, but name of architect "shall appear as the architect on all instruments of service"], 5536.2 [signed statement that licensed architect prepared plans is condition precedent to issuance of building permit].)
Accordingly, an insurer's payment of a settlement or arbitration award exceeding $5,000 on behalf of an architectural firm must be reported to the Board with respect to the architect having responsible control, where the claim or action for damages is based upon alleged wrongful conduct regarding the architectural services performed. However, we again emphasize that section 5588 imposes only a reporting requirement, nothing more. If a reported matter later becomes the subject of an administrative investigation, and if the responsible architect disagrees with the architectural firm's or the insurer's settlement of the claim, the architect may explain to the Board why he or she believes that the claim lacked merit.
We conclude that an insurer is required to report to the Board a settlement or arbitration award exceeding $5,000 that is paid on behalf of an architectural firm, where the claim or action for damages alleges that there was wrongful conduct with respect to the architectural services performed.
[1] All citations hereafter to the Business and Professions Code shall be by section number only.
[2] Section 5500 defines "architect" as ". . . a person who is licensed to practice architecture in this state under the authority of this chapter." The practice of architecture is defined in section 5500.1. The requirements and process for obtaining a license are set forth in sections 5550 through 5558 and in the Board's regulations (Cal. Code Regs., tit. 16, §§ 109-144). It is a misdemeanor to practice architecture in California without a license. (§§ 5536, 5536.1.)
[3] Section 5589 imposes these reporting requirements on uninsured licensed architects who have been the subject of a settlement or arbitration award. Our construction of the terms of section 5588 is equally applicable to those of section 5589. We note that sections 5678.5 and 5679.5 impose similar reporting duties upon licensed landscape architects.
[4] Of course, many claims involving architects do not allege "fraud, deceit, negligence, incompetency, or recklessness in practice." For example, a claim may be settled that is based upon a dispute over ambiguous terms of a contract between a property owner and an architect. Unless an appropriate designated category of wrongful conduct is alleged, the settlement or arbitration of such a claim would not trigger section 5588's reporting requirements.
[5] "To determine the intent of legislation, we first consult the words themselves, giving them their usual and ordinary meaning. [Citations.]" (DaFonte v. Up-Right, Inc. (1992) 2 Cal.4th 593,601.)
[6] Although we are not asked to construe the phrase "action for damages," we find that Code of Civil Procedure section 22 defines "action" as follows: "An action is an ordinary proceeding in a court of justice by which one party prosecutes another for the declaration, enforcement, or protection of a right, the redress or protection of a wrong, or the punishment of a public offense." (See Foster-Gardner, Inc. v. National Union Fire Ins. Co. (1998)18 Cal.4th 857, 878-879; AIU Ins. Co. v. Superior Court (1990)51 Cal.3d 807, 825-826; Serrano v. Unruh (1982) 32 Cal.3d 621, 636; Windham at Carmel Mountain Ranch Assn. v. Superior Court (2003)109 Cal.App.4th 1162, 1175, fn. 15; McAdory v. Rogers (1989)215 Cal.App.3d 1273, 1278; Agricultural Labor Relations Bd. v. Superior Court (1983) 149 Cal.App.3d 709, 714; Nordahl v. Department of Real Estate (1975) 48 Cal.App.3d 657, 664.)